**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-60303**
_____

**MAYOLA A. HENRY,**
**SURVIVING SPOUSE OF JOHNNIE HENRY**
**AND HIS SOLE LEGATEE;**

**Petitioner,**

**versus**

**COORDINATED CARIBBEAN TRANSPORT;**
**AMERICAN MOTORISTS INSURANCE COMPANY; and**
**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,**
**UNITED STATES DEPARTMENT OF LABOR;**

**Respondents.**

_____

Petition for Review of an Order of the Benefits Review Board
_____

February 18, 2000

Before JONES and WIENER, Circuit Judges, and LITTLE, District Judge.[*]

EDITH H. JONES, Circuit Judge:

The issue in this case is whether an agreement between an injured longshoreman's attorney, the employer, and its insurance carrier is enforceable where the employee died before a settlement application conforming to LHWCA regulations was prepared or

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

executed.  We affirm the decision of the Benefits Review Board ("BRB") that no valid settlement agreement existed pursuant to section 8(i) of the Longshoremen and Harborworkers Compensation Act, 33 U.S.C. § 908(i) (1994).

## BACKGROUND

Johnnie Henry suffered a severe injury to his left hand while employed by Caribbean in 1984.[1]  Caribbean, through its insurer, paid his medical care and benefits for several years. When the benefits payments ceased, Henry filed a claim with the Benefits Review Board.  Caribbean was unsatisfied with the award of total permanent disability and appealed to this court, while it paid the required periodic amounts to Henry.  The parties stayed the appeal to discuss settlement, but when no settlement appeared forthcoming, they requested a briefing schedule from the court.  On November 22, 1993, five days after this request, Caribbean faxed to Henry's counsel an offer to settle the future compensation and medical claims for $180,000 and attorneys fees for an additional $20,000. That same day, via facsimile, Henry's attorney confirmed acceptance of the lump sum settlement offer.

Unbeknownst to Respondents, Henry had died – of causes unrelated to his hand injury – the day after the settlement faxes were exchanged.  In their ignorance, the Respondents reconfirmed

---

[1]    As used herein, "Caribbean" or "Respondents" refers both to Caribbean and its insurer American Motorists Insurance Company.

2

the settlement on November 29, agreeing to prepare the application required by Section 8(i) to secure approval by the District Director. The parties jointly moved for a remand from the Fifth Circuit to the District Director to complete the settlement.

Henry's attorney notified the respondents of Henry's death in December and suggested opening a succession and executing settlement through Henry's son. A week later, Caribbean wrote a letter to the District Director advising that it intended to withdraw from the undocumented and unapproved settlement. Countering Respondents' notice of final payment to the District Director, Henry's attorney moved to enforce the settlement agreement, relying upon this court's decision in Oceanic Butler, Inc. v. Nordahl, 842 F.2d 773 (5th Cir. 1988). The Respondents sought summary disposition of the motion. An ALJ denied Henry's motion. The BRB affirmed the decision, and Henry's widow has timely appealed to this court.

## DISCUSSION

Henry's widow contends that the BRB erred in concluding that no enforceable settlement agreement existed with Caribbean and, alternatively, that the District Director should have required Caribbean to execute the documents necessary to secure administrative approval of the settlement. The Department of Labor, siding with Mrs. Henry, further suggests that if Caribbean were to refuse to participate in preparing a settlement

3

application, the District Director should authorize Henry's counsel to do so on behalf of all parties.

These contentions raise legal questions reviewable by this court *de novo*. The Department of Labor, however, invokes <u>Chevron</u>'s rule of judicial deference to administrative authorities[2] to shield its novel approach to the LHWCA and the regulations governing compensation settlements thereunder.

Explaining how the settlement in this case fell short of ordinary procedures attendant to Section 908(i) settlements goes a long way to justify the BRB's decision. Like many employee compensation programs, LHWCA requires administrative supervision of the settlement of claims. Thus, a deputy commissioner or administrative law judge "shall" approve a settlement within thirty days of its submission unless it is "inadequate or procured by duress." 33 U.S.C. § 908(i)(1). The employer's and insurance carrier's liability for benefits shall not be discharged unless the "application for settlement" is so approved. <u>Id</u>.

Regulations describe how the settlement is completed. All parties must sign a "settlement application," a "self-sufficient document which can be evaluated without further reference to the administrative file." 20 C.F.R. § 702.242(a). The contents of the settlement application are comprehensively

---

[2]  <u>Chevron U.S.A., Inc. V. NRDC</u>, 467 U.S. 837, 104 S.Ct. 2778 (1984).

4

prescribed, as emphasized by the provision's title – "Information Necessary for a Complete Settlement Application." Id.[3] The regulations forbid an adjudicator to approve or disapprove a settlement agreement until a complete application, fulfilling section 702.242, has been submitted to him. Sections 702.243(a) and (b).

---

[3] See 20 C.F.R. § 702.242(b):

(b) The settlement application shall contain the following:

(1) A full description of the terms of the settlement which clearly indicates, . . . the amounts to be paid for compensation, medical benefits, . . .

(2) The reason for the settlement, and the issues which are in dispute, if any.

(3) The claimant's date of birth and, in death claims, the names and birth dates of all dependents.

(4) Information on whether or not the claimant is working or is capable of working. This should include, but not be limited to, a description of the claimant's educational background and work history, as well as other factors which could impact, either favorably or unfavorably, on future employability.

(5) A current medical report which fully describes any injury related impairment as well as any unrelated conditions. This report shall indicate . . .

(6) A statement explaining how the settlement amount is considered adequate.

(7) . . . an itemization of the amount paid for medical expenses by year for the three years prior to the date of the application. . . .

(8) Information on any collateral source available for the payment of medical expenses.

5

The interest of the employee and administrative convenience are served by these "paternalistic" regulations. See Nordahl, 842 F.2d at 781. The prescription of a self-sufficient stipulation, signed by all parties, enables the employee to know all that he needs to know about his case, his medical and any disability conditions, and the amounts of benefits he will receive. It is important for a claimant to be able to review the relevant information at one time. The Section 8(i) agreement accomplishes full disclosure for his benefit. Similarly, such a format facilitates effective, protective review by the adjudicator. The prescribed settlement application is the *sine qua non* of the regulations, which carry out the statutory intent.

Henry never executed a settlement agreement with Respondents that complied with § 908(i) and the foregoing regulations. The most that can be said here is that Henry's counsel, acting within his client's alleged delegated authority, accepted a settlement offer transmitted by Carribean the day before Henry died. Even if all the information necessary to complete a settlement application existed in the administrative files, as Henry's counsel asserts, a reference to the files is insufficient under the regulations, which require a settlement agreement to be a "self-sufficient document." More important, of course, is that without Henry's signature, no fully compliant application could be filed. The Board reasonably relied upon the comprehensiveness of

6

the procedure provided in the regulations, and the insufficiency of Henry's counsel's agreement with Caribbean for compliance purposes, in concluding that no valid and enforceable agreement existed.

According to Mrs. Henry, however, the BRB's straight-forward logic fails to account for this court's holding in Nordahl, which held enforceable a settlement application that had been executed and submitted by the claimant and all other parties but lacked administrative approval at the time of the employee's death. As the BRB explained, Nordahl is distinguishable from Henry's case on its facts:

> It is undisputed in the instant case that a formal settlement document was never prepared, that no settlement application was signed by the parties, and that no settlement application was submitted for approval in accordance with § 8(i) and the implementing regulations prior to the employee's death, a meeting of the minds with respect to the settlement amount notwithstanding."

Henry v. Coordinated Caribbean Transport, 32 B.R.B.S. 29, 31 (1998).

While minimizing this distinction, Mrs. Henry urges Nordahl's emphasis on the asymmetric obligations of an employer (and its insurer) and employee under LHWCA. 842 F.2d at 778. She points to Nordahl's exposition of a general rule:

> Setting aside for the moment the problem exemplified by the present case (the claimant's death after execution of the settlement agreement but before approval), the LHWCA's provisions thus require different analyses of the parties' rights under a

7

settlement agreement. [The claimant's obligation under the contract cannot become binding without administrative approval.]

. . .

The insurer's obligation under the agreement -- to pay the designated sum in exchange for a release of the liability that otherwise result under the Act's terms -- is not rendered invalid by anything in the LHWCA.

Id. at 779. This correct statement of the structure of LHWCA regarding settlements begs the question critical to Henry's case, which is, what constitutes a binding settlement. Taken in full context, Nordahl discusses withdrawal rights only in terms of a settlement that has been executed pursuant to the regulations and submitted for administrative approval. See Id. at 779-81.[4] Thus, Nordahl does not support the enforcement of agreements that have been made in principle among the parties but have not been documented according to the regulations and lack a self-sufficient

---

[4] For instance, the court states:

This disparity [between the positions of claimant and employer] leads directly to the general administrative construction that, absent contrary provisions in the contract, executed settlement agreements submitted for administrative approval are binding upon the employer or insurer and not subject to rescission at their election; on the other hand, the agency feels that such submitted settlements are not binding upon claimants, and are subject to rescission by them, until approved, because of the statutory asymmetry of treatment.

842 F.2d at 781 (emphasis added).

8

settlement agreement that can fulfill the purposes of administrative review.[5]

If Mrs. Henry's and the Labor Department's interpretation of Nordahl were correct, a District Director would require authority to enforce specific performance of improperly documented settlement agreements, to compel employers and their insurers to participate in the preparation of settlement applications, and even to allow employees' counsel unilaterally to prepare, sign, and submit settlement applications. Indeed, petitioners cite Nordahl -- and only Nordahl – for the grant of such authority to the District Director. The absence of any statutory or regulatory mandate for the desired relief is telling. Section 908(i) authorizes a limited role for the adjudicator, requiring him to approve settlements or applications for settlements unless they are inadequate or procured by duress. The regulations governing agreed to settlements, 20 C.F.R. §§ 702.241-243, enable an adjudicator to assess the settlement under the statutory criteria; these regulations contain no standards for determining when a settlement has been "agreed to" apart from the filing of a fully-signed application.

---

[5]  Mrs. Henry also attempts to rely on the statement in Nordahl that an employer can protect itself from the possibility of a claimant's death prior to settlement approval by inserting appropriate conditional language into the settlement agreement. 842 F.2d at 780, n.6. The BRB responded to this contention definitively: the employer could hardly have included such language without a formal agreement in which to place it.

That a proper settlement application is the trigger for administrative approval is evident because, according to the regulations, the thirty-day approval period is tolled pending receipt of a complete application. The adjudicator can do nothing to approve or disapprove settlements under the regulations without a proper application. When antecedent questions arise concerning the existence or scope of an undocumented settlement agreement, no enforceable agreement had been reached. Compare Fuller v. Matson Terminals, 24 B.R.B.S. 252 (1991) (no valid settlement agreement pursuant to Section 8(i) without a document conforming to the regulations and signed by the parties) with Nelson v. American Dredging Co., 143 F.3d 789, 792-93 (3d Cir. 1998) (no enforceable settlement agreement, where parties only "agreed in principle" and failed to complete § 8(i) stipulation). We may not defer, even under Chevron, to a proposed administrative interpretation that has no statutory or other support. The District Director could not enforce an agreement that was not documented according to the regulations, and he was not empowered to compel the filing of a § 8(i) settlement application under these circumstances.

The result reached in this case is not unjust generally or specifically. It comports with the LHWCA and its regulations. Further, Caribbean paid Henry all the compensation he was owed during his lifetime; a settlement would only have covered future

10

disability.  The BRB did not err in failing to enforce a settlement unsigned by Henry and noncompliant with the regulations.

The Board's decision and order are **AFFIRMED.**

11