**Edward O'NEIL, Personal Representative of the Estate of Raymond O'Neil, Petitioner,**

v.

**BUNGE CORPORATION; Director, Office of Workers' Compensation Programs, Respondents.**

No. 02–71248.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 2004.

Filed April 23, 2004.

Meagan A. Flynn, Preston Bunnell & Stone, Portland, Oregon, for petitioner Edward O'Neil.

Jay W. Beattie, Lindsay, Hart, Neil & Weigler, LLP, Portland, Oregon, for respondent Bunge Corporation.

Before: GOODWIN, McKEOWN and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Edward O'Neil, as the personal representative of the estate of Raymond O'Neil ("O'Neil"), appeals the denial of O'Neil's claim for benefits by the Department of Labor Benefits Review Board ("BRB"). We must decide whether O'Neil and his former employer entered into an enforceable settlement even though O'Neil died before signing a settlement application prepared by the parties' attorneys. Settlement of O'Neil's benefit claim is governed by Section 8(i) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 908(i) [hereinafter § 908(i)], and its implementing regulations, 20 C.F.R. §§ 702.241 to 702.243. The LHWCA regulations make clear that approval of a settlement is contingent upon the submission of a signed settlement application. Because Raymond O'Neil did not sign the settlement application, there is no enforceable settlement agreement between O'Neil and Bunge.

## Background

O'Neil suffered a work-related myocardial infarction on March 18, 1980, and began receiving permanent partial disability compensation pursuant to a compensation

order issued on August 2, 1983. In 1998, O'Neil through his attorney began negotiations with the Bunge Corporation ("Bunge"), his former employer, for a settlement that would pay O'Neil a lump sum in lieu of the biweekly payments he had been receiving. On September 29, 1998, Bunge's attorney, William Tomlinson, forwarded to O'Neil's attorney, Donald Wilson, a proposed settlement in the form of an LHWCA settlement application, detailing the settlement's terms and providing for a $63,000 payment to O'Neil in settlement of all further liability for compensation and medical benefits. Wilson requested minor language changes, and Tomlinson subsequently sent a revised settlement application incorporating those changes.

According to Wilson's affidavit, O'Neil had informed him by telephone that he would sign the application when he returned from a hunting trip. O'Neil died on October 16, 1998, however, before signing the proposed settlement application. On October 30, Wilson advised the district director of O'Neil's death and that he was substituting Edward O'Neil, Raymond's brother and the representative of his estate, as beneficiary of the settlement agreement. Wilson submitted the settlement application—signed by *Edward* O'Neil—for the district director's approval. Tomlinson then informed the district director that Bunge considered the settlement unenforceable because Raymond O'Neil had not signed the application.

The administrative law judge ("ALJ"), relying on the Fifth Circuit's decision in *Henry v. Coordinated Caribbean Transport*, 204 F.3d 609 (5th Cir.2000), *aff'g* 32 B.R.B.S. 29 (Dep't of Labor Ben. Rev. Bd.1998), concluded that there was no enforceable settlement agreement and denied the claim for benefits. The BRB subsequently affirmed the ALJ's decision, also relying on *Henry*.

## Standard of Review

We review de novo the BRB's interpretation of the LHWCA. *See Metro. Stevedore Co. v. Crescent Wharf & Warehouse Co.*, 339 F.3d 1102, 1105 (9th Cir. 2003). We grant no "special deference" to the BRB's construction of the LHWCA but " 'must ... respect the [BRB's] interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute.' " *Gilliland v. E.J. Bartells Co.*, 270 F.3d 1259, 1261 (9th Cir.2001) (quoting *McDonald v. Dir., OWCP*, 897 F.2d 1510, 1512 (9th Cir. 1990)).

## Discussion

### I.

The LHWCA superimposes a statutory and regulatory regime over the contract law principles that would normally govern this agreement. Typically, " '[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.' " *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir.1992) (quoting *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1989)). In Oregon, where the settlement negotiations occurred in this case, settlement agreements are enforceable once agreed upon, unless the parties intend their agreement to become enforceable only after it is reduced to writing. *See Hughes v. Misar*, 189 Or.App. 258, 76 P.3d 111, 115 (App.2003) ("When parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their agreement more formally does not affect the immediately binding nature of the agreement."); *see also id.* at 115 n. 6 ("Our holding is consistent with the gener-

al rule of contract law that parties may intend a writing simply as a memorial to express their already consummated contract. If they fail to agree on the writing the contract is still valid." (citing Arthur Corbin, 1 Corbin on Contracts, § 2.9, at 156 (Joseph M. Perillo rev. ed.1995))); 1 Samuel Williston, Williston on Contracts § 4:8, at 300 (4th ed. 1990) ("[W]here it was understood that the contract should be formally drawn up, and put in writing, the transaction is nevertheless complete and binding, absent a positive agreement that it should not be binding until so reduced to writing and formally executed.").[1]

■ Thus, were the settlement between O'Neil and Bunge not subject to the LHWCA, the lack of a signed document setting forth the parties' agreement would not necessarily preclude enforcing their agreement. However, the regulations make clear that parties may not settle LHWCA claims except in accordance with the statute—in this case, under § 908(i). *See* 33 U.S.C. §§ 915(b), 916.

■ Section 908(i)'s main purpose "clearly is protection of the claimants', and the public's, interest in preserving them and their families from destitution and consequent reliance on the taxpaying public." *Oceanic Butler, Inc. v. Nordahl,* 842 F.2d 773, 781 (5th Cir.1988). Section 908(i) achieves its purpose through substantive and procedural safeguards. Substantively, "the deputy commissioner or administrative law judge shall approve the settlement within thirty days unless it is found to be inadequate or procured by duress." § 908(i)(1). Essentially, this provision assigns to the LHWCA's administrators "the statutory responsibility of second-guessing the claimant" even when the claimant is represented by counsel and believes a settlement to be in his best interest. *Nordahl,* 842 F.2d at 781.

■ Procedurally, "[w]henever the parties ... agree to a settlement," they must submit the settlement to the deputy commissioner or an ALJ for approval. § 908(i)(1). Thus, § 908(i) contemplates that LHWCA settlements will be enforced only after (1) the parties agree to a settlement, and (2) an administrator approves that settlement. The statute and regulations refer to the document that is submitted as an "application." *Id.;* 20 C.F.R § 702.243(a). An employer's or insurance carrier's liability is not discharged "unless the application for settlement is approved by the deputy commissioner or administrative law judge." § 908(i)(1).

The required contents of a "complete application" are set forth in regulations promulgated by the Department of Labor, however, rather than in the LHWCA. 20 C.F.R. § 702.243(a). They provide that the settlement application "shall be in the form of a stipulation *signed* by all the parties." *Id.* § 702.242(a) (emphasis added). Further, it "shall contain a brief summary of the facts of the case," *id.,* and a variety of other information. *See* 20 C.F.R. § 702.242(b).[2] The guiding principle for these requirements is that "[t]he

---

1. Oregon settlement agreements may be subject to Oregon's statute of frauds, Or.Rev.Stat. § 41.580 (amended 2003). *See, e.g., Kaiser Found. Health Plan of Northwest v. Doe,* 136 Or.App. 566, 903 P.2d 375, 382–83 (Or.Ct. App.1995) (concluding that nurse's promise in settlement agreement not to reapply for employment with employer and confidentiality clause of agreement did not violate the statute of frauds).

2. 20 C.F.R. § 702.242(b) reads:
   (b) The settlement application shall contain the following:
   (1) A full description of the terms of the settlement which clearly indicates, ... the amounts to be paid for compensation, medical benefits, survivor benefits and representative's fees....
   (2) The reason for the settlement, and the issues which are in dispute, if any.

settlement application shall be *a self-sufficient document* which can be evaluated *without further reference to the administrative file.*" *Id.* § 702.242(a) (emphasis added).[3] Both "[t]he interest of the employee and administrative convenience are served by these 'paternalistic' regulations." *Henry,* 204 F.3d at 611.

▮▮▮▮ The regulations make "a proper settlement application ... the trigger for administrative approval." *Henry,* 204 F.3d at 613. "Failure to submit a complete application shall toll the thirty day [approval] period" set forth in § 908(i). 20 C.F.R. § 702.243(a). Further, the adjudicator will consider a settlement's substantive fairness only after receiving a completed application. *See* 20 C.F.R. § 702.243(f). Thus, without a complete settlement application, "[t]he adjudicator can do nothing to approve or disapprove settlements." *Henry,* 204 F.3d at 613. And absent approval of a settlement application, there is no enforceable settlement agreement. *Cf. Norfolk Shipbuilding & Drydock Corp. v. Nance,* 858 F.2d 182, 186 (4th Cir.1988) ("The terms of the [§ 908(i)] settlement agreement, in conjunction with the statutes and regulations that govern its effect, prohibit enforcement of any verbal agreement by [the employee] to leave his job not included in the settlement terms...."); *Towe v. Ingalls Shipbuilding, Inc.,* 34 B.R.B.S. 102, 2000 WL 1133564, *3 (Dep't of Labor Ben. Rev.

Bd.2000) ("The failure to provide a complete application prevents the district director or the administrative law judge from ruling on the application, 20 C.F.R. § 702.243(b), and also prevents the application from being automatically approved 30 days after its submission, 20 C.F.R. § 702.243(a).").

## II.

Here, we must decide whether the regulatory requirement of a "stipulation signed by all the parties" is a prerequisite to the enforcement of a § 908(i) settlement, even though Oregon law does not normally condition enforcement of a settlement agreement on the existence of a signed document.

In *Henry,* the only other circuit court case to address this issue, the information required under 20 C.F.R. § 702.242 existed in the administrative files but had not been set forth in a single, signed document before Henry's death. *Henry* held that "[t]he prescribed settlement application is the *sine qua non* of the regulations," and that satisfying the signature requirement was even "[m]ore important" than producing an otherwise complete settlement application. 204 F.3d at 611. The court concluded that "without Henry's signature, no fully compliant application could be filed," *id.,* and that "[t]he District Director could [neither] enforce an agreement that was not documented according to the regu-

---

(3) The claimant's date of birth and, in death claims, the names and birth dates of all dependents.

(4) Information on whether or not the claimant is working or is capable of working. This should include, but not be limited to, a description of the claimant's educational background and work history, as well as other factors which could impact, either favorably or unfavorably, on future employability.

(5) A current medical report which fully describes any injury related impairment as well as any unrelated conditions....

(6) A statement explaining how the settlement amount is considered adequate.

(7) ... an itemization of the amount paid for medical expenses by year for the three years prior to the date of the application. ...

(8) Information on any collateral source available for the payment of medical expenses.

**3.** The regulations also provide that the document must be sent to the adjudicator by some method that provides for proof of delivery. 20 C.F.R. § 702.243(a).

lations ... [nor] compel the filing of a ... settlement application under these circumstances." *Id.* at 613.[4] The BRB has followed *Henry. See Rogers v. Hawaii Stevedores, Inc.,* 2003 WL 21041378, *4 n. 3 (Dep't of Labor Ben. Rev. Bd.2003) ("In contrast to the situation where the employee dies after an executed settlement has been submitted for approval, an agreement which has not been signed by the parties or submitted for approval at the time of death is not binding on either party.").

Unlike the parties in *Henry,* O'Neil and Bunge reduced their agreement to a single document supplying all the information required by the regulations. In seeking to enforce the settlement, O'Neil's estate is attempting to look beyond the settlement application only to prove O'Neil's assent, rather than the settlement's terms. And neither party has argued that the settlement was inadequate or unfair to O'Neil. Thus, the policy of § 908(i) appears to have been largely satisfied in this case, so—assuming that O'Neil in fact orally agreed to the proposed settlement—it seems unfortunate that his acceptance of a lump-sum payment would lapse for want of a signature.

Nonetheless, we decline to read into the LHWCA settlement approval process an exception for an unsigned settlement.[5]

Enforcing a settlement between O'Neil and Bunge would undermine the administrative efficiency that the regulations seek to achieve, introducing an uncertainty about the claimant's actual acceptance of the proposed settlement. The regulations create a bright line requirement that settlement applications be "self-sufficient" and "evaluated without further reference to the administrative file." 20 C.F.R. § 702.242(a). O'Neil did not sign the application or any other document setting forth the settlement terms, so his assent to the settlement can only be proved by reference to the administrative file or other evidence of his acceptance—here, testimony from his attorney. Moreover, despite his attorney's attestation that O'Neil planned to sign the document after returning from his hunting trip, there is no record evidence that O'Neil ever reviewed the document himself. *See Henry,* 204 F.3d at 611 ("The prescription of a self-sufficient stipulation, signed by all parties, enables the employee to know all that he needs to know about his case, his medical and any disability conditions, and the amounts of benefits he will receive."). O'Neil was not obligated to sign the document and, had he read it, he might have found some reason not to do so. Without O'Neil's signature, the issue of his actual acceptance is thus open to dispute—at

---

**4.** *Henry* distinguished the Fifth Circuit's previous decision in *Nordahl,* upon which O'Neil relies here. *Nordahl* held that a settlement application had been properly approved even though the claimant had died shortly after submitting the written, signed application for approval. 842 F.2d at 779. *Henry* interpreted *Nordahl's* holding as limited to situations in which a complete application has been submitted for approval:

> Taken in full context, *Nordahl* discusses withdrawal rights *only* in terms of a settlement that has been executed pursuant to the regulations and submitted for administrative approval. Thus, *Nordahl* does not support the enforcement of agreements that have been made in principle among the

parties but have not been documented according to the regulations and lack a self-sufficient settlement agreement that can fulfill the purposes of administrative review.

*Henry,* 204 F.3d at 612 (citing *Nordahl,* 842 F.2d at 779–81).

**5.** Because the only purported settlement agreement in this case is the unsigned settlement application, we do not decide whether an agreement may be enforced if it is set forth in a signed document not styled as an application, but which contains the information that the regulations require and is submitted according to the procedure described in 20 C.F.R. § 702.243.

least complicating the administrative approval process and perhaps fostering litigation. The regulations' bright line objective would thus be frustrated. *See Henry,* 204 F.3d at 611; *cf. Hightower v. Kirksey,* 157 F.3d 528, 531 (7th Cir.1998) (holding designation of beneficiary form was invalid under Federal Employees' Group Life Insurance Act ("FEGLIA"), because it was not signed by insured as required by FEGLIA, and explaining that court would not consider extrinsic evidence of insured's intent because "the aim of Congress in amending FEGLIA was to establish, for reasons of administrative convenience, an inflexible rule that a beneficiary must be named strictly in accordance with the statute, irrespective of the equities in a particular case." (internal quotation marks omitted)); *cf. also* 95 C.J.S. *Wills* § 226 (2003 update) ("[S]tatutes in most states require wills to be signed by or for the testator. An instrument that is not signed by the testator as required by statute cannot be given effect as a will.") (footnote omitted); Or.Rev.Stat. § 112.270(1)(c) (requiring that a contract to make a will be established by "[a] writing signed by the decedent evidencing the contract").

Were we to conclude that O'Neil and Bunge reached an enforceable settlement, even though O'Neil never signed the application, we would invite complications and costs in this and future cases that the regulations specifically aim to avoid. We therefore hold that the bright line requirement of the LHWCA's implementing regulations controls, rather than the contract law principles that would normally govern the interpretation of unsigned settlement agreements in Oregon. Under those regulations, the document submitted by O'Neil's attorney—not signed by Raymond O'Neil—was not a complete application, and there is no enforceable settlement agreement between O'Neil and Bunge.[6]

## III.

By signing and submitting the settlement application, Edward O'Neil did not cure the application's deficiency. The LHWCA provides settlement procedures for the "parties to any claim," 33 U.S.C. § 908(i)(1), and the regulations require that those parties must sign the application. 20 C.F.R. § 702.242(a). Because Edward O'Neil was not a party in the settlement negotiations, his signature is not the one contemplated by 20 C.F.R. § 702.242.

Nor could Edward O'Neil become a party to and accept the settlement application after Raymond O'Neil's death. "An offeree's power of acceptance is terminated when the offeree or offeror dies or is deprived of legal capacity to enter into the proposed contract." RESTATEMENT (SECOND) OF CONTRACTS § 48 (1981); *see also* 17 C.J.S. *Contracts* § 65 (2003 update) ("The death or incapacity of either party before acceptance is communicated causes an offer to lapse. An acceptance communicated to the representatives of the offerer cannot bind them, nor can the representatives of a deceased offeree accept the offer on behalf of his estate.") (footnotes omitted). Thus, under normal contract law principles, Raymond O'Neil's power to accept the settlement agreement and to be a party to the application ended when he died. Edward O'Neil could not, therefore, complete the settlement application by signing it on Raymond O'Neil's behalf after Raymond died.

---

**6.** Edward O'Neil has asserted that, in light of *Nordahl,* parties to § 908(i) settlements sometimes provide in their applications that the agreements shall not be enforceable if the claimant dies before approval. He argues that because Bunge failed to include such a provision in the settlement application at issue here, the agreement is enforceable. This argument ignores the antecedent question of whether the lack of O'Neil's signature on the application rendered the entire agreement unenforceable.

## Conclusion

The enforcement of an LHWCA settlement agreement depends on the submission of a document containing the information and signatures required by the LHWCA's implementing regulations. Because Raymond O'Neil did not sign the settlement application here, there is no enforceable settlement between O'Neil and Bunge.[7]

The BRB's decision and order are **AFFIRMED**.

---

7. There is no evidence that Bunge stopped paying O'Neil his partial disability compensation once the parties entered into negotiations, which means that O'Neil received "all the compensation he was owed during his lifetime." *Henry*, 204 F.3d at 613. Nor does death generally deprive LHWCA claimants and their estates of full disability payments. *See* 33 U.S.C. § 908(d)(1) (specifying manner of distribution for remaining payments under partial disability benefits when claimant dies before payments under the schedule are completed); 20 C.F.R. § 802.402(b) (providing that claimant's death does not necessitate dismissal of a claim pending appeal); *Nordahl*, 842 F.2d at 779–81 (holding completed and signed settlement agreement could be enforced where claimant died before the Director's approval).