**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DONALD GOLDEN,
    *Plaintiff-Appellant*,

v.

CALIFORNIA EMERGENCY
PHYSICIANS MEDICAL GROUP; MED
AMERICA; MARK ALDERDICE;
ROBERT BUSCHO,
    *Defendants-Appellees*.

No. 12-16514

D.C. No.
3:10-cv-00437-
JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
February 14, 2014—San Francisco, California

Filed April 8, 2015

Before: Alex Kozinski, Diarmuid F. O'Scannlain,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge O'Scannlain;
Dissent by Judge Kozinski

**SUMMARY**[*]

**Settlement**

The panel reversed the district court's order that a settlement agreement be enforced in an employment discrimination action filed by a physician.

The agreement included a provision that the physician waive his rights to employment with the defendant or at any facility that the defendant may own or with which it may contract in the future.

The panel held that the parties' private party contract dispute regarding whether the no-employment provision voided the settlement agreement was ripe for review under the traditional ripeness standard.

The panel held that the district court abused its discretion in holding that Cal. Bus. & Prof. Code § 16600, which provides that a contract is void if it restrains anyone from engaging in a lawful profession, did not apply solely because the no-employment provision in the settlement agreement did not constitute a covenant not to compete. The panel remanded the case to the district court for further proceedings.

Dissenting, Judge Kozinski wrote that the settlement agreement was not void because the no-employment

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

provision did not limit the physician's current ability to practice his profession.

## COUNSEL

Richard Raines, Gagen, McCoy, McMahon and Armstrong, Danville, Cal., argued the cause and filed the briefs for the plaintiff-appellant.

Sarah E. Robertson, Fitzgerald, Abbott & Beardsley LLP, Oakland, Cal., argued the cause for defendants-appellees. Mark Alan Delgado, Fitzgerald, Abbott & Beardsley LLP, Oakland, Cal., filed the brief for defendants-appellees. With him on the brief was Sarah E. Robertson, Fitzgerald, Abbott & Beardsley LLP, Oakland, Cal.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether California law prohibits a settlement agreement that may constrain a physician's freedom to practice medicine.

### I

### A

Donald Golden, M.D., is an emergency-room doctor formerly affiliated with the California Emergency Physicians Medical Group (together with other related defendants sued in this action, collectively, "CEP"), a large consortium of

over 1000 physicians that manages or staffs many emergency rooms, inpatient clinics, and other facilities in California and other, mostly Western states. In May 2008, Dr. Golden sued CEP in the California Superior Court of Alameda County, regarding the loss of his staff membership at Seton Coastside Medical Facility; he alleged various state and federal causes of action including racial discrimination. CEP removed the suit to federal court in January 2010 based on original subject-matter jurisdiction under 28 U.S.C. § 1331.

Prior to the scheduled trial date, the parties orally had agreed in open court to settle the case. In return for a substantial monetary amount, Dr. Golden consented to relinquish his current suit, to forego all other possible claims he may have against CEP, and furthermore—most important for this appeal—to waive any and all rights to employment with CEP or at any facility that CEP may own or with which it may contract in the future (the "no-employment provision"). The magistrate judge then presiding expressly confirmed with Dr. Golden that he bound himself thereby, although he did so "extremely reluctantly." The terms of this agreement were subsequently reduced to writing.

Following the hearing, Dr. Golden refused to execute the written agreement and attempted to have it set aside. Dr. Golden's attorney, who represented him during the settlement negotiations and entered into the resulting agreement on his behalf, moved the court to withdraw as counsel, a motion on which the court never specifically acted. Instead, the district court referred the matter to the magistrate judge to determine whether it may enforce the settlement agreement. The magistrate judge, on June 23, 2011, issued her Report and Recommendation, advising that various provisions of the written agreement, not relevant to this case, be struck and,

over Dr. Golden's objections, that he be compelled to sign the amended document.  The district court adopted the magistrate judge's recommendation in full.

Dr. Golden nevertheless refused to sign the agreement and filed a notice of appeal, which this Court dismissed for lack of jurisdiction.  *Golden v. Cal. Emergency Physicians Med. Grp.*, No. 11-16983 (9th Cir. Jan. 9, 2012).  Thereupon Dr. Golden's former counsel moved the district court to intervene and further moved to enforce the settlement agreement.  Following several continuances and responsive papers filed by the defendants, former counsel, and Dr. Golden, the district court ultimately granted the motion to intervene, ordered the settlement be enforced, and dismissed the case.  Dr. Golden filed a timely notice of appeal.

B

On appeal, Dr. Golden raises only one argument[1]: the no-employment provision of the agreement violates California law as a contract restraining the lawful practice of a profession.  *See* Cal. Bus. & Prof. Code § 16600.  Since the no-employment provision constituted a material term, Dr. Golden submits, the entire settlement agreement is consequently void and his lawsuit should be reinstated.

1

The no-employment provision expresses the parties' agreement "that . . . Golden shall not be entitled to work or be

---

[1] Earlier in the district court proceedings, Dr. Golden advanced various reasons for invalidating the settlement, including friction with his counsel, inadequate advice, and severe personal stress.

reinstated at any CEP-contracted facility or at any facility owned or managed by CEP." Such provision, however, not only waives any right Dr. Golden otherwise may have to continue or to regain previous or current employment with CEP; it also provides that "if CEP contracts to provide services to, or acquires rights in, a facility that is an emergency room . . . at which Golden is employed or rendering services, CEP has the right to and will terminate Golden from any work in the emergency room without any liability whatsoever." CEP retains a similar right, by virtue of this provision, to terminate Dr. Golden as a hospitalist at any facility that it may acquire or with which it may contract at some future point. The parties nevertheless further agreed to the possibility of a future employment arrangement at an "urgent care facility" but only under very narrow and well-defined circumstances.

2

Section 16600 of the California Business and Professions Code instructs that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Courts and commentators appear unanimously to agree that this language regulates non-competition covenants, to whatever extent it also prohibits other professional restraints. Nowhere either in the no-employment provision or in the remainder of the agreement does Dr. Golden arguably surrender any right to practice his profession generally, nor any right to seek employment with CEP's competitors or at facilities in which CEP does not have an ownership interest or with which it does not contract for services. Rather, the no-employment provision solely governs the terms on which CEP agrees to do business with Dr. Golden in the future. Concluding that the

no-employment provision did not inhibit Dr. Golden from competing with CEP, the district court determined that section 16600 did not void the settlement agreement.

II

Before we address the merits of Dr. Golden's appeal, we must first satisfy ourselves that we have jurisdiction over the case. Unlike other issues, which the litigants are under an obligation to raise or else we consider waived, the federal courts must independently evaluate whether a particular dispute meets the constitutional "case" or "controversy" requirement of Article III. *See, e.g.*, *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008) ("[W]e bear an independent obligation to assure ourselves that jurisdiction is proper before proceeding to the merits."); *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n.13 (1991) ("[Because ripeness] concerns our jurisdiction under Article III, . . . we must consider the question on our own initiative.").

Dr. Golden contends that section 16600 voids his settlement agreement because, in a future set of circumstances uncertain—perhaps unlikely—ever to materialize, the no-employment provision may impermissibly restrain his professional practice. We must therefore determine whether his prayer for relief would require us to adjudicate a merely hypothetical dispute that is currently unripe for review.

A

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). So-called prudential ripeness has a "twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

Nevertheless, in previous cases, we have concluded that we do not analyze the prudential component of the ripeness inquiry in private contract litigation. *In re Coleman*, 560 F.3d 1000, 1006 n.15 (9th Cir. 2009). We held specifically, in *Principal Life Insurance Co. v. Robinson*, that "the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 394 F.3d 665, 671 (9th Cir. 2005) (internal quotation marks omitted).

*Principal* reasoned that the prudential-ripeness doctrine, "root[ed] in cases involving administrative agencies," *id.* at 670, had developed in order to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements *over administrative policies*, and also to *protect the agencies* from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties," *id.* (quoting *Cal. Dep't of Educ. v.*

*Bennett*, 833 F.2d 827, 833 (9th Cir. 1987) (internal quotation marks omitted)). Given the origin and rationale of prudential ripeness, *Principal* discerned "no legal or logical requirement compelling the extension" of the doctrine "to cases involving only private contracts." *Id.*

Although we have not had occasion to apply *Principal* in an appeal from an order enforcing a settlement agreement, the principle exemplified in that case applies to the facts presented here. Assessing the validity of a settlement agreement, as our precedents make clear, is a question of state contract law. *See, e.g.*, *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004) ("Typically, the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (internal quotation marks omitted)). The decisive issue here, accordingly, is one of ordinary contract law; thus, we do not consider the "prudential" factors outlined in *Abbott Laboratories* and its progeny to assess this case's ripeness.

In addition, the reasoning articulated in *Principal*—which originated as a declaratory-judgment suit—for dispensing with the prudential component of the ripeness inquiry applies with equal, if not greater, force in ordinary disputes about contractual enforcement. *Principal* concluded that, when reviewing administrative actions, important institutional concerns cautioned all the more strongly against premature judicial involvement. We notably observed that private suits for declaratory judgments ordinarily do not have, as administrative actions usually do, "consequences for many members of the general public, not just those directly in the immediate controversy." 394 F.3d at 670. Extending declaratory relief to private parties does not ordinarily trigger

separation-of-powers concerns as often does "judicial entanglement in administrative agency actions before the agencies have had an opportunity to take action or make decisions." *Id.* at 671. But if these considerations, which gave rise to and justified the prudential-ripeness doctrine, are absent in most private declaratory-judgment suits, all the more so will they not appear in an action to enforce an agreement. Moreover, declaratory-judgment suits raise ripeness concerns—in a typical context—when conduct that allegedly violates a contractual provision has not yet been undertaken or when any injury from actual or potential breaches has yet to materialize. *See, e.g.*, *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (explaining that the court has "dismissed claims that are based solely on harms stemming from events that have not yet occurred, and may never occur" as insufficiently ripe). Declaratory-judgment suits may require the courts to rule on legal issues before the surrounding facts have fully matured. But when a litigant resists his adversary's attempt to enforce a contract against him, the dispute has already completely materialized. As a result, the special imperative, in administrative appeals, that courts stay their hands slackens considerably in a case such as this.

We therefore confirm expressly what the logic of *Principal* necessarily implies: only the "traditional ripeness standard" applies in actions to enforce settlement agreements. To satisfy this standard, Dr. Golden's claim must at least present a substantial controversy between parties having adverse legal interests that savors of sufficient immediacy and reality to warrant resolution.

B

Dr. Golden's former attorney sought, in the district court, to enforce the settlement agreement so that he might collect his contingency fee. No party here disputes that such claim would be ripe for review. But Dr. Golden contends that if section 16600 voids the no-employment provision, the whole settlement agreement falls. Indeed, even CEP's counsel conceded at oral argument that the no-employment provision is a material term, and CEP would not have consented to an agreement that simply deleted that provision.[2] To affirm the district court's enforcement of the settlement agreement—in a way that would allow the parties to litigate the validity of the no-employment provision in a future factual context—would not defer resolution of the allegedly "hypothetical" dispute between the parties. Rather, it would settle such dispute, at least partially, by ruling that the settlement agreement stands regardless of future events that may, to some extent, void the no-employment provision.

This appeal triggers judicial concerns about ripeness because Dr. Golden's argument depends, in some sense, on a "hypothetical" state of future affairs. But Dr. Golden does

---

[2] In supplemental briefing that followed oral argument, CEP now takes the position that the appeal is unripe for review, because "[w]ith the exception of [the no-employment provision], the parties agree that the Settlement Agreement is otherwise enforceable," and thus "the District Court's decision ordering enforcement of the Settlement Agreement and dismissing this action should be affirmed."

CEP, however, does not—and indeed, after its concession at oral argument, cannot—dispute the materiality of the no-employment provision and, consequently, the fate of the entire agreement should we find such provision void.

not ask us for a declaratory judgment that the no-employment provision theoretically violates California law in this uncertain future.  Rather, he argues that, under the State's business and professions code, the agreement is *currently* void.  Dr. Golden, moreover, did not force this issue himself; his former attorney, interested in his contingency fee, besought the district court to enforce the settlement.  Only in defending against the enforcement proceedings did  Dr. Golden contend that, due to the no-employment provision, California law voids the agreement.  Dr. Golden's legal interest in this case, stated precisely, concerns the *present* enforcement of the settlement rather than the *future* interaction between the no-employment provision and his emergency-medicine practice.

For such reasons, this appeal satisfies the "traditional ripeness standard" reaffirmed in *Principal*.  The parties in this case have clearly "adverse legal interests"—one wishes to settle on the agreement's terms, the other prefers to press the suit.  Whether a substantial monetary amount will change hands—and whether a legal claim concededly worth at least that much will be foregone—presents a "substantial controversy."  Adjudicating the question presented by this appeal will determine whether the lawsuit ends and the money is paid *in the present*, and therefore savors of "sufficient immediacy and reality" to warrant resolution.[3]

---

[3] We may silence any lingering doubts about this case's ripeness by considering how we would dispose of this appeal had we found jurisdiction lacking.  To dismiss the appeal as unripe, without more, would be a paradoxical ruling that the district court could currently enforce the settlement agreement, notwithstanding any properly raised and distinctly articulated concerns about its voidness under state law.  This would be equivalent to finding the case ripe and ruling against Dr. Golden on the merits.

We conclude, therefore, that this dispute is ripe for review.

III

"We review a district court's enforcement of a settlement agreement for abuse of discretion." *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136 (9th Cir. 2002); *see also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). A district court abuses its discretion when, among other instances, it applies an incorrect rule of law. *See, e.g.*, *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000).

In its order enforcing the settlement agreement, the district court held section 16600 of the California Business and Professions Code to be inapposite. The no-employment provision, explained the district court, "is not a covenant not to compete," but rather "reflects the parties['] intent that . . . Defendants chose not to employ Dr. Golden at [their] facilities." Furthermore, the no-employment provision "does not . . . preclude Dr. Golden from working for one of [their] competitors or at a hospital or other facility not operated by Defendants."

The decisive question for this appeal, therefore, is whether the district court erred by categorically excluding this settlement agreement from the ambit of section 16600 on the sole ground that it did not constitute a covenant not to compete.

A

Dr. Golden contends that no California case has ever explicitly *limited* the reach of section 16600 to traditional

non-compete clauses in employment agreements. Further, Dr. Golden argues that no case cited by CEP has upheld such a clause specifically as consistent with section 16600. No California court, seemingly, has yet confronted such an argument. Given CEP's dominance of emergency medicine within the State and its aggressive plans to expand its geographical footprint, Dr. Golden asserts that the agreement, if enforced, will substantially limit his opportunities to practice. CEP not only will refuse to employ him, but also will "terminate" him, "without any liability whatsoever," if it subsequently acquires an interest in a facility where he would be working. Dr. Golden argues that the settlement clearly restrains him in a meaningful way from practicing his medical specialty by forcing him preemptively to surrender a position he may obtain in the future if certain circumstances—completely outside his control—eventually come to pass.

B

This Court looks to state law to guide its "construction and enforcement of settlement agreements." *O'Neil*, 365 F.3d at 822. The California Supreme Court has not ruled expressly whether section 16600 applies only to typical so-called "non-compete covenants." In other words, California seems not to have settled whether a contract can impermissibly restrain professional practice, within the meaning of the statute, if it does not prevent a former employee from seeking work with a competitor and if it does not penalize him should he do so.

When the highest court of a state has not yet decided an issue of state law, a federal court must "apply what [it] find[s] to be the state law after giving proper regard to relevant

rulings of other courts of the State." *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (internal quotation marks omitted); *accord, e.g.*, *Martin v. United States*, 984 F.2d 1033, 1039 (9th Cir. 1993).

1

In the first place, section 16600 of the California Business and Professions Code provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The statute does not specifically target covenants not to compete between employees and their employers: the text does not include any form of the word "compete" or "competition," and does not even implicitly constrain itself to contracts concerning employment. Rather, section 16600 voids "*every* contract" that "restrain[s]" someone "from engaging in a lawful profession, trade, or business." *Id.* (emphasis added).

The breadth of this statutory prohibition appears even more stark when read alongside the successive provisions in the Code that admit of a few, narrow exceptions. Section 16601 permits a business owner selling his interest in the company, under certain circumstances, to "agree with the buyer to refrain from carrying on a similar business within a specified geographic area." Likewise, section 16602 countenances an agreement among partners, upon dissociation or dissolution of the partnership, "not [to] carry on a similar business within a specified geographic area." *See also* Cal. Bus. & Prof. Code § 16602.5 (allowing "[a]ny member . . . , upon or in anticipation of a dissolution of, or the termination of his or her interest in, a limited liability company . . . [to] agree . . . not [to] carry on a similar business within a specified geographic area"). Such statutory

exceptions seem by their plain language to correspond to more conventional non-compete covenants. Given the different, narrower language with which such sections describe the category of contracts excepted from the ban, we reasonably expect the general prohibition to extend further.

When carving out exceptions to section 16600, the California legislature demonstrated an ability to describe, with considerable detail, a subspecies of the contracts "by which anyone is restrained from engaging in a lawful profession, trade, or business." But when articulating the general rule against professional restraints, the legislature adopted categorical language: "*every* contract" that "restrain[s]" anyone "from engaging in lawful profession . . . *of any kind*" is "void." *Id.* § 16600 (emphasis added). Accordingly, the statutory context lends little support to construing section 16600 much more narrowly—as simply a prohibition of agreements between employers and employees not to compete—than its plain language would otherwise suggest.

2

The California Supreme Court, furthermore, has articulated a broad understanding of what constitutes a void contract under section 16600. In a seminal case, which both parties here invoke for support, the supreme court invalidated, under the predecessor to section 16600, a provision in a contract that required one of the parties to pay $5,000 in liquidated damages to the other party if he takes up employment within a certain geographical area. *Chamberlain v. Augustine*, 156 P. 479 (Cal. 1916). The court specifically rejected the argument that the contract withstands the law's ban because it does not restrict the party from "exercising a

lawful business, but is merely an agreement that if he did engage in such business he would pay the sum." *Id.* at 480. Although this contract did not affirmatively prevent the party from engaging in his lawful business, "[i]t imposes upon him a liability in the sum of $5,000 if he does engage in such business" and thus "he is not as free to do so as he would have been if he were not bound by it." *Id.* The court in *Chamberlain* did not determine merely that the contract imposed an impediment to competition; rather, it concluded that "the necessity of paying $5,000 . . . is clearly a restraint of a substantial character and the form in which it is cast does not make it less a restraint." *Id.* At least in this canonical statement of the California Supreme Court, the crux of the inquiry under section 16600 is not whether the contract constituted a covenant not to compete, but rather whether it imposes "a restraint of a substantial character" regardless of "the form in which it is cast."

The California Supreme Court's most recent statement on section 16600 underscores how strictly the state understands the statutory proscription on professional restraints. Analyzing the genesis of the law, the court explained "that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (Cal. 2008); *see also D'sa v. Playhut, Inc.*, 85 Cal. App. 4th 927, 933 (2000).[4]

---

[4] California's stringent rule departs from the more traditional approach of the common law, which recognized a "rule of reasonableness" with respect to covenants not to compete and other similar contractual restraints. *See* Restatement (Second) of Contracts § 188 (1981); *see also Bosley Med. Group v. Abramson*, 161 Cal. App. 3d 284, 288 (1984) (discussing history of California's rejection of the common-law rule). Although the Code permits such anti-competitive covenants in some circumstances, *see* Cal. Bus. & Prof. Code §§ 16601, 16602, 16602.5, and

At issue specifically in *Edwards* was a more traditional variety of non-compete covenants—an employment agreement forbidding a certified public accountant from poaching Arthur Andersen's clients and personnel after leaving the firm.    Nevertheless, the court used this opportunity to reaffirm the State's strong policy against restraints to professional practice and specifically to disavow even narrow exceptions that the federal courts had begun to fashion.    Notably, *Edwards* rejected a proposed rule—apparently suggested by earlier California cases and extended by the Ninth Circuit—"that a mere limitation on an employee's ability to practice his or her vocation would be permissible under section 16600, as long as it was reasonably based." *Id.* at 291.  The state supreme court, moreover, did not simply inquire—as both the district court in this case did and CEP, in its brief, urges us to do—whether the challenged provisions permit the employee to compete with his former employer.  The decisive concern for the court, rather, was that the agreement "restricted his ability to practice his accounting profession." *Id.* at 292.

CEP cites a decision from an intermediate appellate tribunal, *City of Oakland v. Hassey*, 163 Cal. App. 4th 1477 (2008), which upheld a contractual provision requiring police officers to reimburse the department if they voluntarily left their jobs before completing five years of service. According to CEP, this case counsels against applying section 16600 outside the context of non-compete covenants.    The

---

the state courts uphold restrictive contracts to protect trade secrets, *see Muggill v. Reuben H. Donnelley Corp.*, 398 P.2d 147, 149 (Cal. 1965); *Gordon v. Landau*, 321 P.2d 456, 459 (Cal. 1958), otherwise California does not make exceptions for narrow or reasonable restraints, *see Edwards*, 189 P.3d at 292–93.

California Court of Appeal concluded, contrary to the police officer's claim of contractual invalidity under section 16600, that "nothing in the agreements . . . 'restrained [him] from engaging in [his] lawful trade, business or profession.' Nothing prevented him from working for another police department, or anywhere else, for that matter." *Id.* at 1491 (alterations in the original) (citation omitted). Although CEP invokes the case to argue that section 16600 outlaws only agreements not to work for a former employer's competitors, *Hassey* does not necessarily read that statute so narrowly. The decisive point in *Hassey*, indeed, was that "nothing in the agreements . . . restrained [him] from engaging in [his] lawful trade, business or profession." *Id.* (internal quotation marks omitted).

Both *Edwards* and *Hassey* begin with the text of the law: whether the contested provision "restrained anyone from engaging in [his] lawful trade, business, and profession," and not specifically whether it prevented him from competing with his former employer's services. In *Edwards*, furthermore, the California Supreme Court restated the statutory anti-restraint policy even more emphatically and intimated that even "a mere limitation on an employee's ability to practice his or her vocation . . . [that was] reasonably based" would fall afoul of section 16600. 189 P.3d at 291. Under such a broad reading of the statute, the contractual provision approved by the intermediate appellate court in *Hassey* perhaps also should have failed: a requirement to reimburse training expenses could impose a meaningful obstacle to "employee mobility," *Edwards*, 189

 P.3d at 291, and, hence, limit the opportunities one may have to engage in one's chosen line of work.[5]

C

In determining a contract's validity under section 16600, therefore, the court should direct its inquiry according to the actual statutory language: whether the challenged provision "restrain[s anyone] from engaging in a lawful profession, trade, or business of any kind."  Cal. Bus. & Prof. Code § 16600.  This prohibition extends to any "restraint of a substantial character," no matter its form or scope. *Chamberlain*, 156 P. at 480.  The statutory context of section 16600 furthermore suggests that the prohibition on professional restraints extends to a larger category of contracts than simply those where the parties "agree . . . to refrain from carrying on a similar business within a specified geographic area."  Cal. Bus. & Prof. Code § 16601; *see also Edwards*, 189 P.3d at 293 ("[The prohibition in section 16600 is] unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect.").

---

 **[5]** Dr. Golden makes a similar point in his reply brief, claiming that *Hassey* contravenes *Chamberlain v. Augustine*.  The obstacle to employee mobility in *Chamberlain*, Dr. Golden argues, is indistinguishable from that of *Hassey*—that is, a payment of money to a former employer.  Whether *Hassey* conflicts with the rule of *Chamberlain*, which the California Supreme Court has not since explicitly abrogated, depends on whether the reimbursement requirement is a restraint of a "substantial character" similar to the sum of liquidated damages at issue in the older case.  The *Hassey* court does not answer that question expressly, but like *Chamberlain*, as well as *Edwards*, it analyzed the issue according to the broader statutory language of section 16600.

The district court, in ruling on whether section 16600 applies to the no-employment provision, began its analysis by stating a narrower principle: "[i]n California, covenants not to compete are void." From that premise, the court then proceeded to find that, because the no-employment provision is not such a covenant, it does not fall within the statutory prohibition.[6] Accordingly, the district court seems to have mischaracterized the appropriate legal rule; such an error constitutes an abuse of discretion.

The courts of California have not clearly indicated the boundaries of section 16600's stark prohibition but have nevertheless intimated that they extend to a considerable breadth. At the very least, we have no reason to believe that the State has drawn section 16600 simply to prohibit "covenants not to compete" and not also other contractual restraints on professional practice. We refrain, however, from addressing the ultimate merits of this question on the relatively undeveloped record that accompanies this appeal, leaving the district court at liberty to order additional briefing or to conduct further fact-finding as it deems prudent. On remand, the district court should determine in the first instance whether the no-employment provision constitutes a restraint of a substantial character to Dr. Golden's medical practice.

---

[6] The district court did reasonably recapitulate Dr. Golden's argument that, due to the no-employment provision, "in effect, he cannot work because Defendants own a large number of hospitals and facilities in California." Despite acknowledging this contention, and quoting the statutory language, the court still stated and applied a more circumscribed legal rule than that of the California courts.

## IV

For the foregoing reasons, we reverse the judgment of the district court and remand the case for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**

KOZINSKI, Circuit Judge, dissenting:

Dr. Golden and California Emergency Physicians (CEP) have a serious disagreement and they have agreed to resolve it by parting ways. Dr. Golden is paid a large sum of money and, in exchange, he gives up his right to continue working for CEP. The provision barring Dr. Golden from current employment by CEP cannot possibly violate California Business and Professions Code § 16600 because the continuation of their employment relationship is the very subject in controversy in this lawsuit, and one possible outcome would be that he would lose his job and get nothing in exchange. If this violates section 16600, few employment disputes could ever be settled.

The only way section 16600 might be implicated is if, at some future time, Dr. Golden were working for an entity that is acquired by CEP, in which case the agreement would give the employer a right to fire him without a further showing of cause. We have no way of knowing whether this part of the settlement agreement will ever come into play, as its enforcement depends on numerous circumstances that are not capable of determination at this time: where Dr. Golden will choose to live and work; where he will find employment; and

what facilities, if any, CEP will acquire in the future. If the stars align and all this came to pass, we would then have to determine whether Dr. Golden's ability to practice his profession at that indefinite future time would be adversely affected, a highly contingent inquiry depending on numerous factors that are susceptible to little more than a guess today. The majority remands for further fact-finding, but fact-finding normally involves reconstructing past events, not prognosticating about the future. The court will need a ouija board to "find" any of the facts the majority believes are relevant to whether the agreement will violate section 16600.

What we know for sure is that the settlement agreement does not limit Dr. Golden's ability to practice his profession *at this time*—except to the extent that he can't work for CEP. No case cited by the majority, and none I'm aware of, has construed section 16600 as preserving an unfettered right to employment in all future circumstances, no matter how remote or contingent.

If and when the scenario Dr. Golden fears to comes to pass, he can raise section 16600 as a defense to his dismissal. A court can then adjudicate the issue in light of the concrete circumstances as they exist at that time—including making a factual determination whether CEP's share of the market is so great that being dismissed by them impairs Dr. Golden's ability to practice his profession. If it is, then that portion of the settlement agreement might, in the words of section 16600, be "to that extent void." But I can see no justification for allowing this remote contingency to serve as an excuse for Dr. Golden to finagle his way out of his contract and deprive his lawyer of the fee he has earned. Because I seriously doubt that the California Supreme Court would reach such a result, I would affirm the judgment of the district court.