

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-18-1241-TaBKu |
| U.S.A. DAWGS, INC., | Bk. No. 2:18-bk-10453-mkn |
| Debtor. | Adv. No. 2:18-ap-01011-mkn |
| MOJAVE DESERT HOLDINGS LLC, | |
| Appellant, | |
| v. | MEMORANDUM* |
| GEMCAP LENDING I, LLC, | |
| Appellee. | |

Argued and Submitted on February 21, 2019
at Las Vegas, Nevada

Filed – March 25, 2019

Appeal from the United States Bankruptcy Court
for the District of Nevada

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Laurel E. Babero, Bankruptcy Judge, Presiding

Appearances:    Elizabeth E. Stephens of Sullivan Hill Lewin Rez & Engel argued for Appellant; Todd Michael Lander of Freeman, Freeman & Smiley LLP argued for Appellee.

Before: TAYLOR, BRAND, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Shortly after filing a chapter 11[1] case, debtor U.S.A. Dawgs, Inc. filed an adversary proceeding (the "Adversary Proceeding") against its prepetition financier, GemCap Lending I, LLC ("GemCap"). GemCap asserted an approximately $3,900,000 claim against Debtor's bankruptcy estate, but in the Adversary Proceeding Debtor asserted claims for damages, offset, and declaratory relief.

Eventually, Debtor and GemCap agreed, on the record, that GemCap would have an allowed secured claim for $4,300,000 and that Debtor would either promptly finalize a reorganization plan or liquidate its assets. Both an unsuccessful proposed plan and the order approving the eventually required asset sale provided for a GemCap secured claim in the amount established in the oral agreement.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

After the sale, and on the eve of a hearing on GemCap's motion seeking formal dismissal of the Adversary Proceeding, the purchaser of all the estate's assets sold claims against GemCap and another entity to Mojave Desert Holdings LLC ("Mojave"). Mojave sought to delay the hearing on the dismissal motion. But the bankruptcy court denied this request and then dismissed the Adversary Proceeding with prejudice; it held that Debtor and GemCap had reached an enforceable agreement that liquidated GemCap's claim and resolved all issues extant in the Adversary Proceeding.

Mojave appeals both decisions. It argues that the bankruptcy court abused its discretion in denying its continuance request, that the Debtor-GemCap agreement on the record did not explicitly require dismissal of the Adversary Proceeding, and that, if the oral agreement was a final resolution of the Adversary Proceeding, the bankruptcy court erred by not requiring Rule 9019 notice and a hearing. We disagree. Mojave bought the claim with a dismissal motion pending; it does not credibly argue that the bankruptcy court erred in adhering to the long established hearing schedule. Similarly, the bankruptcy court did not err when it dismissed the Adversary Proceeding based on an agreement between the Adversary Proceeding's parties that encompassed resolution of all issues raised in the Adversary Proceeding.

We AFFIRM the bankruptcy court's orders.

## FACTS

We start with the cast of characters:

- Double Diamond Distribution Ltd ("Double Diamond") is a Canadian company that develops and sells DAWGS Brand footwear.

- Debtor, USA Dawgs, Inc. is the United States distributor for DAWGS Brand footwear.

- Steven Mann and his brother Barrie Mann are co-owners of Double Diamond and the majority owners and officers of Debtor. Steven Mann is Debtor's president and CEO, while Barrie Mann is Debtor's secretary and treasurer.

- James Mann, Steven and Barrie Mann's brother, formed Mojave to, among other things, acquire litigation claims against GemCap.

- GemCap is an asset-based lender that provided prepetition financing to Debtor.

Debtor filed a chapter 11 petition in January 2018. Eight days later, GemCap filed a motion to dismiss, to appoint a trustee for bad faith, or, in the alternative, for stay relief or for abstention.

Shortly thereafter Debtor filed an adversary complaint against GemCap. It alleged:

- Debtor was founded in June 2006 to distribute DAWGS footwear in the United States. Eventually, it needed financing and contracted with GemCap.

4

- The GemCap loan agreement provided for a revolving line of credit secured by Debtor's inventory and accounts receivable. The parties amended the loan agreement seven times. GemCap received interest at rates between 13% and 17% and collected significant fees.

- Debtor always maintained sufficient capital to secure the loan, and initially GemCap consistently provided funding and advances.

- In mid-2017, GemCap began reduction of the borrowing base, demanded additional information, and refused to provide customary advances.

- GemCap then sought an eighth loan amendment; it contained onerous demands and terms. Debtor signed the amendment under duress.

- In January 2018, GemCap delivered a notice of default to Debtor, accelerated all obligations, imposed the default interest rate, and demanded that Debtor assemble collateral.

- Debtor disputed the notice of default.

- GemCap sent letters to Debtor's customers directing them to send payments to GemCap because of Debtor's default.

- Debtor and GemCap then agreed to a standstill that terminated on January 31, 2018 at noon. Debtor informed GemCap it would file a chapter 11 petition once the standstill terminated.

- True to its word, Debtor filed bankruptcy on January 31, 2018 at 12:01

p.m. It informed GemCap's counsel of this at 12:16 p.m. Despite that notice, GemCap filed a district court lawsuit against Debtor at 12:19 p.m.

- GemCap asserted that it was owed $3,895,104.83 on the petition date.

The Adversary Proceeding complaint then listed eight claims for relief and requested a judgment: for damages; for punitive damages; declaring that GemCap violated the automatic stay and for associated damages; declaring that GemCap was not properly licensed in Nevada and that the loan was void; sustaining Debtor's objection to GemCap's proof of claim; determining the amount of GemCap's claim; further reducing the claim by offsets; for an accounting; for reasonable attorneys' fees and costs; and for pre and post-judgment interest.

GemCap responded with a motion seeking dismissal of the Adversary Proceeding.

The main bankruptcy case was active and remained contentious; various matters came on for hearing on May 10, 2018. From any reasonable debtor's perspective, this hearing was a minefield: GemCap opposed Debtor's request for use of its cash collateral; if use was authorized, GemCap objected to Debtor's proposed budget; an evidentiary hearing on GemCap's motion to dismiss or appoint a chapter 11 trustee was set to go forward; and GemCap's motion to dismiss the Adversary Proceeding would be heard.

Debtor's counsel began the hearing by implicitly acknowledging peril and agreeing to a rapid conclusion of the case. She stated an intention to treat May 31, the date exclusivity terminated, as a hard date to commence the plan process. She further noted that, given the contentious state of the case, Debtor had filed a motion to approve a letter of intent with a new lender, Optimal Investment Group ("Optimal"). GemCap thereafter expressed its intent to make an offer for Debtor's assets. The bankruptcy court took a recess so the parties could attempt a negotiated resolution.

Two hours later, the parties returned to court and stated that, although they needed the weekend to allow Optimal to contact its principals, they had an agreement in principle:

MS. KOZLOWSKI: -- so that's it on the record.

So what -- the framework of the resolution of these motions would be that GemCap would have an allowed claim of $4.3 million. The -- there would be a drop-dead date by which the debtor must pay that $4.3 million, and that would be July 31. In the ancillary litigation pending in California, there would be stipulated judgments against the principals that would be held pending payment on July 31, which could be recorded on July 31.

With regard to the plan process and the [Letter of Intent], [Optimal] would agree to put funds in escrow by July 15th, and again, all subject to conversations with their counsel and other principals, but this is the framework we're hoping to effectuate. We'd be looking for a confirmation hearing between June 15th

and June 29th, subject to the Court's calendar. The parties would work in good faith to move as expeditiously as possible to confirmation.

If the plan is not confirmed on whatever that confirmation hearing date is, GemCap would immediately be able to proceed with a stalking horse bid procedures, which would be teed up. So, for instance, if confirmation was on the 29th and Your Honor denied confirmation of the plan, they would be able to tee those up for the following day, effectively, is how it would proceed.

That's generally the framework of where we are.

Hr'g Tr. (May 10, 2018) 23:14–24:13. Satisfied with the proposal, the bankruptcy court continued the matters to May 17, 2018.

At the continued hearing, the bankruptcy judge again took a recess so the parties could negotiate. When the parties returned, Debtor's counsel represented that the parties had reached a deal "again in principle." Hr'g Tr. (May 17, 2018) 26:3. The terms (the "May 17th Agreement") were:

[F]irst, GemCap will have an allowed $4.3 million claim. [Optimal] will fund escrow, $4.95 million, by June 15th. If the money does not fund by June 15th, an auction process will be in place. The parties will negotiate bid procedures in good faith and will file the bid procedures motion by May 25th. Any hearings on the bid procedures motion will be heard the first week of June with briefing due June 4th and a hearing on -- pursuant to whatever the Court has available. . . . The payment to GemCap will be made upon the effective date of the plan. The confirmation date will remain July 6th. . . . If the plan is not

confirmed, there will be an auction the day after the order denying confirmation. There will be a July 31st drop-dead date if there is no order confirming the plan, and the auction will proceed that day. And, Your Honor, that's subject to, obviously, circumstances that are outside all parties' controls. All of today's hearings will be continued to July 6th, and the California litigation against the guarantors is not stayed.

*Id.* at 26:9–27:6. The bankruptcy court continued the hearing on all matters to June 29th.

After the May 17th Agreement, the bankruptcy case moved forward accordingly.

On May 22, 2018, GemCap filed its notice of credit bid "in connection with its allowed secured claim of $4,300,000 . . . ."

On May 25, 2018, Debtor filed a motion to approve bidding procedures and to authorize the sale of its assets free and clear, which stated: "Debtor has agreed to an allowed secured claim in favor of GemCap in the amount of $4.3M."

Debtor then filed its chapter 11 plan and disclosure statement. It placed GemCap in its own class and described GemCap as having an allowed $4,300,000 claim. The disclosure statement, while describing the chapter 11 process, described GemCap as aggressively opposing nearly everything Debtor filed. But, it explained, Debtor and GemCap resolved their then-pending disputes—which it had just described as including the adversary complaint—through GemCap's acceptance of a $4,300,000

payment to satisfy its claim in exchange for GemCap's support of Debtor's reorganization.

Optimal, however, did not fund Debtor's proposed reorganization plan. So Debtor provided a notice of an auction that established a deadline for bids, and the bankruptcy court entered an order approving bidding procedures. The approved procedures provided that, if there were no qualified bids, the GemCap credit bid would be the highest bid.

The day after bids were due, Double Diamond filed a motion to remove litigation claims, including the Adversary Proceeding claims against GemCap, from the list of assets being sold at the auction. In opposition, GemCap argued that Double Diamond failed to object to the May 17th Agreement even though Steven Mann and Barrie Mann (Debtor's and Double Diamond's owners) were present in court.

The bankruptcy court heard the matter two days later. Double Diamond's counsel ignored the May 17th Agreement and, given Debtor's objection to GemCap's claim in the Adversary Proceeding, questioned GemCap's ability to credit bid. Eventually, the following exchange occurred between the bankruptcy judge and Double Diamond's counsel:

THE COURT:     But didn't the debtor make a deal in this case?

MR. RAANAN:  No.

THE COURT:     I mean, this was -- no, this was a negotiated deal put on the record in front of me –

MR. RAANAN:   Yeah.

THE COURT:      -- at a hearing.

MR. RAANAN:   What was the deal, Your Honor? I looked at the transcript. It doesn't say anything certainly about waiving rights, you know, in terms of GemCap. It doesn't say a lot of things. It does say that they agreed to the auction, but it doesn't say anything about not having the ability to reconsider. And, also, what kind of a deal was it?

THE COURT:      Isn't a deal a deal?

MR. RAANAN:   No. Your Honor, there is no such thing as, you know, going up on the record and saying I'll agree to sell it and we're stuck with it. Number one, there was no motion.

THE COURT:      And -- right. And then we have a bid procedures motion and then we approve the procedures and everyone's on the same page.

Hr'g Tr. (June 28, 2018) 20:22–21:16. GemCap's counsel then argued that, from GemCap's perspective, it had negotiated a deal resolving the dispute and, in reliance on that deal, had allowed Debtor to consume millions of dollars of its cash collateral.

The bankruptcy judge ruled orally, stating:

I appreciate the argument. I've certainly looked at this and considered it very carefully. I believe that the agreement that was reached on May 17th regarding the bid procedures, as well as the bid-procedures motion and the bid-procedures order at Docket Entry 383, should be enforced.

11

I adopt all of the arguments and points and authorities that have been made against the motion with respect to the judicial estoppel, inconsistent statements; a deal is a deal. The negotiations, the consideration, the detrimental reliance, all of those points raised by GemCap, as well as Crocs, but we will be here tomorrow and we will go to auction as set forth in the bid-procedures order.

So if someone would prepare an appropriate order.

*Id.* at 53:13–54:1. Double Diamond's counsel requested clarification:

MR. RAANAN:   Yeah. Your Honor, in light of the arguments that, number one, there are objections to the GemCap's claim in the adversary proceeding, there has been no 9019 motion, and therefore, no opportunity for the Court to consider any kind of settlement of those claims. Would GemCap still be allowed to credit bid? If the answer is no, okay. If the answer is yes, how much? How do we decide what their credit bid is?

THE COURT:     GemCap's credit bid is in accordance with the credit bid that they put on file with the Court.

MR. RAANAN:   So Your Honor is adopting the –

THE COURT:     I am allowing them to proceed as proposed.

MR. RAANAN:   Is their claim allowed then? Considered to be allowed, or –

THE COURT:     Based upon the agreement that was put on the record on May 17th, their claim is allowed.

MR. RAANAN:   So what does that -- where does that leave the

adversary proceeding claim that says that it's being objected to? Does that mean it's been resolved now?

THE COURT:      It means it's been continued to –

MS. BROWN:      July 6th, Your Honor.

*Id.* at 54:17–56:13.

The sale proceeded the next day. Optimal's counsel informed the bankruptcy court and parties that James Mann, the brother of Debtor's officers, approached him about purchasing the GemCap claims; but Optimal clarified that its bid was not contingent on the resale. The bankruptcy court approved the bid and the backup bid and directed the parties to submit an order. It thereafter entered an order denying Double Diamond's motion to remove the litigation assets from the sale for the reasons stated on the record and an order approving the sale (the "Sale Order").

The Sale Order confirmed that the prevailing bidder was Dawgs Holdings LLC, a Delaware LLC and provided that GemCap's lien would attach to the cash proceeds "up to its Allowed Secured Claim of $4,300,000.00, with the same validity, force, and effect that such claim has now against the Assets or their proceeds." Dawgs Holding LLC was an entity formed by Optimal.

The hearing on the motion to dismiss the Adversary Proceeding was now scheduled to proceed, but, three days before the hearing date, Mojave,

the entity created by James Mann, sought a continuance based on its recent purchase of the litigation claims from Dawgs Holding LLC. The bankruptcy court considered the continuance request and proceeded to the merits of the dismissal. After hearing argument, the bankruptcy judge provided an oral ruling:

> Thank you. Based upon the Court's prior rulings, starting with the May 19th agreement with respect to the dollar amount of GemCap's claim and as reiterated in the argument on June 12th, I found an enforceable agreement with respect to the dollar amount of the GemCap claim such that the claims set forth in the adversary proceeding should be dismissed. So for the reasons set forth in the May 17th agreement, as reiterated on June 22nd, and somewhat law of the case, in this case the adversary proceeding will be dismissed.

Hr'g Tr. (Aug 6, 2018) 17:16–24. The bankruptcy judge clarified that the dismissal was with prejudice.

The order that followed granted GemCap's motion to dismiss with prejudice based on: first, the bankruptcy court's prior ruling that the May 17, 2018 Agreement was enforceable; and second, the findings of fact and conclusions of law placed on the record at the hearing on the dismissal motion itself. The bankruptcy court also entered an order denying the motion to continue the hearing.

Mojave timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B), (C), (M). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion when it denied Mojave's continuance motion?

Did the bankruptcy court err when it dismissed the Adversary Proceeding?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's dismissal with prejudice of the Adversary Proceeding. But we review the bankruptcy court's "enforcement of a settlement agreement for [an] abuse of discretion." *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1089 (9th Cir. 2015); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). We also review for an abuse of discretion the bankruptcy court's decision to deny a continuance. *See United States v. 2.61 Acres of Land, More or Less, Situated in Mariposa Cty., State of Cal.*, 791 F.2d 666, 671 (9th Cir. 1985).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (*citing United States v. Hinkson*, 585 F.3d

15

1247, 1262 (9th Cir. 2009) (*en banc*)).

## DISCUSSION

Mojave argues on appeal: first, the bankruptcy court should have granted its motion to continue the hearing; second, the May 17th Agreement did not require dismissal of the Adversary Proceeding; and third, the bankruptcy court should have required a Rule 9019 motion if the May 17th Agreement was a settlement of the Adversary Proceeding. We disagree on all theories.

### A. The bankruptcy court did not abuse its discretion when it denied Mojave's request to continue the hearing.

"The decision to grant or deny a requested continuance lies within the broad discretion of the [trial] court, and will not be disturbed on appeal absent clear abuse of that discretion." *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985). Indeed, a court's denial of continuance will not be overturned unless it is arbitrary or unreasonable. *2.61 Acres of Land, More or Less, Situated in Mariposa Cty., State of Cal.*, 791 F.2d at 671. Here, we discern no abuse of the bankruptcy court's broad discretion to manage its own calendar.

The bankruptcy judge, in exercising this discretion, could take into account the multiple prior continuances of the hearing and the fact that the time for opposition had passed. She could also rely on her extensive knowledge of the history of the case. She was entitled to conclude that

Mojave acquired the Adversary Proceeding claims as they existed in the hands of the Debtor and that nothing necessitated that she provide Mojave with an opportunity for objection or a right to be heard beyond those available to the Debtor. And given all of the above, she was entitled to conclude that the hearing would proceed. Indeed, the family relationship between Mojave's founder, James Mann, and the Debtor's control persons, Steven and Barrie Mann, underscores that Mojave was not a stranger to the Debtor, its bankruptcy, and the Adversary Proceeding claims before the acquisition and that the optics and equities did not support continuance.

We acknowledge that case law suggests four relevant factors a court should weigh before considering a continuance. And we also acknowledge that the bankruptcy court did not explicitly discuss these factors. But our review of the record does not suggest any basis for reversal even if we focus on these factors here.

The first factor is the appellant's diligence in preparing a defense before the hearing. *Id.* In its brief, Mojave claims that it was diligent because it sought a continuance as soon as it closed the purchase, but the record makes clear that James Mann (Mojave's founder) was contemplating the purchase over a month earlier. Mojave was not an outside purchaser surprised by the pendency of the dismissal motion hearing, and it cannot demonstrate relevant and sufficient diligence here. This factor, at best, is neutral.

The second factor is whether the need for a continuance could have been met if the continuance had been granted. *Id.* Mojave argues that a short continuance would have allowed Mojave to decide what course of action it wanted to take in connection with the Adversary Proceeding and would have avoided the appeal. This characterization is disingenuous. Again, the record makes clear that Mojave knew about the hearing on the motion to dismiss before the purchase. Mojave does not articulate with reasonable specificity how a two week continuance would have made any difference. This factor does not support continuance.

The third factor is whether granting a continuance would inconvenience the court and the opposing party. *Id.* Mojave dismisses GemCap's articulated inconvenience, the time and expense of attending yet another hearing. We disagree. GemCap was entitled to have its lead counsel from Los Angeles present at hearings, and it would be harmed by this additional expense. This factor does not support continuance.

The fourth factor is prejudice. *Id; Khan v. Rund (In re Khan)*, BAP No. CC-11-1542-HPaD, 2012 WL 2043074, at *9 (9th Cir. BAP June 6, 2012). Mojave argues that it was prejudiced because it could have taken any number of actions regarding the asset it purchased before dismissal with prejudice. For instance, it says, citing *Stern v. Marshall*, 564 U.S. 462 (2011), it could have asked the bankruptcy court to consider whether it had jurisdiction to hear the argument on the motion to dismiss because it was

18

now an action between two non-debtors; or it could have sought to dismiss or otherwise transfer the action to another forum; or it could have even sought reconsideration of prior determinations. We disagree for two reasons. First, Mojave cannot show prejudice as a result of the timing of the hearing because it never argues that it lacked knowledge of the upcoming, potentially case-dispositive hearing when it purchased the Adversary Proceeding claims. It assumed the risk that the bankruptcy court would exercise its considerable discretion to go forward on the hearing date. And, perhaps more importantly, given the bankruptcy court's conclusion that the Adversary Proceeding claims were fully resolved by the May 17th Agreement, a determination that we affirm, there was no prejudice in reaching the decision at a scheduled hearing as opposed to after a two week continuance.

In sum, the bankruptcy court did not abuse its discretion in denying the request for a continuance.

**B. The bankruptcy court correctly concluded that the May 17th Agreement required dismissal of the Adversary Proceeding.**

Mojave, carefully listing all twelve terms, argues that the May 17th Agreement did not include or require dismissal of the Adversary Proceeding. Mojave is technically correct: the parties did not identify the Adversary Proceeding in their agreement nor did they expressly state that it would be dismissed. But this omission is not fatal; nor does it require

19

reversal of the bankruptcy court's decision.

To start, the bankruptcy court dismissed the Adversary Proceeding with prejudice for two reasons: first, it found an enforceable agreement; and second, it incorporated by reference the reasons it gave at the June 28th hearing. At that hearing, the bankruptcy court agreed with GemCap that judicial estoppel applied. On appeal and despite identifying the standard of review for the application of judicial estoppel (abuse of discretion), Mojave never argues that the bankruptcy court's application of judicial estoppel was erroneous. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). This works either a waiver or forfeiture. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited."); *McKay v. Ingleson*, 558 F.3d 888, 891 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). More to the point, it is a separate, undisputed ground to affirm the bankruptcy court's decision.

Nor can Mojave be heard to complain about the application of judicial estoppel, as we are unable to find a reason why it should not apply in the present case. Judicial estoppel "is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton*, 270 F.3d at 782. In the Ninth Circuit, judicial estoppel is restricted

to cases where the court relied on the previous inconsistent position. *Id.* at 783. Here, Debtor took the position that GemCap had a liquidated secured claim of $4,300,000 in various filings; as a result of this position, Debtor induced GemCap to support Debtor's chapter 11 efforts instead of opposing them at every turn, GemCap allowed use of its cash collateral, and the bankruptcy court relied on this position when it vacated an evidentiary hearing, continued various hearings, and entered orders approving the sale and its procedures. We see no abuse of discretion where the bankruptcy court found that the Debtor was judicially estopped from denying that the May 17th Agreement resolved all issues related to the amount and quality of the GemCap claim and in further finding that this determination also bound Mojave when it acquired the Adversary Proceeding claims from the Debtor as a subsequent transferee.

Even when we proceed to the arguments Mojave does raise, we see no error. Mojave wrongly supposes that the bankruptcy court found that the May 17th Agreement, by its express terms, required dismissal. But that is not what the bankruptcy court said. The bankruptcy court concluded that the May 17th Agreement liquidated GemCap's claim and, as a result, the Adversary Proceeding, which was filed to determine the amount of GemCap's claim, was resolved.[2] A summary review of the Adversary

---

[2] The parties did not, for instance, agree that GemCap's claim would be

<span style="float:right">(continued...)</span>

Proceeding complaint and case proceedings confirms the correctness of this analysis.

- As alleged in the Adversary Proceeding complaint, the lending relationship between Debtor and GemCap faltered and both accused the other of breach. Debtor filed bankruptcy, and GemCap asserted a claim. Debtor filed the Adversary Proceeding to determine the amount, based on the alleged mutual breaches, owed to GemCap.

- As the chapter 11 proceeded, Debtor and GemCap reached an agreement: GemCap would have a $4,300,000 allowed secured claim. In exchange, GemCap would support Debtor's chapter 11 plan, which provided for GemCap's claim in that amount. Debtor also agreed that, if reorganization failed, it would sell its assets and pay GemCap's agreed claim from the proceeds. And this is the agreement that Debtor discussed, first, in its chapter 11 plan and related disclosure statement and, second, in its sale motion. It consistently said that GemCap had a $4,300,000 allowed secured claim.

- Thus, when reorganization failed and the asset sale proceeded, the accompanying Sale Order stated that GemCap had an allowed secured claim of $4,300,000.

---

[2](...continued)
provisionally allowed for voting, plan confirmation, or sale purposes. They agreed that it would be an allowed, liquidated, secured claim.

As a result, the bankruptcy court properly dismissed the Adversary Proceeding with prejudice because the Debtor and GemCap had already resolved the ultimate issue for decision, the amount of GemCap's claim. In doing so, the bankruptcy court stated that it was enforcing the May 17th Agreement, which liquidated the amount of GemCap's claim.[3] This was not an abuse of discretion.

**C.**    **Mojave and all creditors had adequate notice of the terms of the May 17th Agreement.**

Mojave next argues that the bankruptcy court should have required a Rule 9019 motion with notice to all creditors before finally approving the May 17th Agreement. Mojave never articulates why this might be an issue until its reply appellate brief where it posits that the lack of notice violated due process rendering the "settlement" void.

To start, Mojave is wrong: notice is not always required. Rule 9019 states that "after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). But the Rule goes on to state: notice shall be given "as provided in Rule 2002 . . . ." Fed. R. Bankr. P. 9019(b). Rule 2002, in turn, provides for twenty-one days' notice for a "hearing on approval of a compromise or settlement of a controversy . . . unless the court for cause shown directs that notice not be sent . . . ." Fed. R.

---

[3] At oral argument, Mojave was unable to articulate what in the Adversary Proceeding remained to be resolved after the parties entered into the May 17th Agreement.

Bankr. P. 2002(a)(3). The Rules, thus, expressly allow a bankruptcy court to waive the requirement of notice on all creditors.

Mojave then imprudently relies on *In re Kong* (one of our unpublished, non-precedential decisions) for its due process argument. *Yang Jin Co., Ltd. v. Miller (In re Kong)*, BAP No. CC-15-1371-KiTaL, 2016 WL 3267588 (9th Cir. BAP June 6, 2016). In *In re Kong*, the debtor, chapter 7 trustee, and a potential purchaser appeared at a sale hearing. *Id.* at *3. The debtor and chapter 7 trustee negotiated a settlement during a recess and read the terms into the record. *Id.* The bankruptcy court then approved the settlement under Rule 9019 and stated that it was not concerned about there being any other creditors who would care about the agreement. *Id.* at *4. But there was a concerned creditor; it appealed. *Id.*

On appeal, we vacated and remanded. *Id.* at *9. In doing so, we emphasized that Rule 9019's notice requirements were not mandatory and were subject to waiver by the bankruptcy court. *Id.* at *8. This was because, in part, the purpose of the notice provision "is to provide parties with a pecuniary interest in the settlement an opportunity to object to a settlement agreement that is unsatisfactory." *Id.* at *7. And so we explained: "While bankruptcy courts have discretion to reduce or eliminate the notice period for settlements or compromises, that discretion is limited." *Id.* at *8 (citing cases). For a bankruptcy court to dispense with formal notice requirements, "generally some exigent circumstance existed where the court needed to

act quickly or providing notice to all creditors was unduly burdensome."
*Id.* Those circumstances, we concluded, were not present in that case: there were no exigent circumstances; creditors had no notice whatsoever; the trustee had noticed the hearing as a sale subject to overbid and not as a settlement; and the purchaser who attended the hearing was prohibited from overbidding. *Id.* at *9.

*In re Kong* does not support Mojave's position, and Mojave, who was not a creditor, is not comparable to the *Kong* appellant.

Here, Debtor's creditors had sufficient notice of the salient terms of the May 17th Agreement and opportunities for opposition. Debtor provided notice that GemCap's claim was allowed at $4,300,000 in its plan and disclosure statement and referred to GemCap's credit bid in its motion to sell. No creditor or other party objected to the motion to sell on that basis. And the bankruptcy court accordingly granted the sale motion and determined, in the Sale Order, that GemCap's claim was $4,300,000.

Further, Mojave lacks standing to complain about lack of notice.[4] It purchased the GemCap claims from a prevailing bidder. So it acquired only the prevailing bidder's interests. *Cf. Trejos v. VW Credit, Inc. (In re Trejos)*, 374 B.R. 210, 215 (9th Cir. BAP 2007) ("An assignee typically 'steps into the shoes' of an assignor."). And the prevailing bidder's interest was limited by the terms of the Sale Order which explicitly states that

---

[4] Mojave's standing to question the May 17th Agreement is also suspect.

GemCap's allowed secured claim was $4,300,000. Mojave has not, did not, and cannot appeal the Sale Order, which is now final.

Finally, Mojave never argues that approving the May 17th Agreement was an abuse of discretion under Rule 9019. Although the bankruptcy court did not clearly and distinctly articulate the relevant factors,[5] the bankruptcy judge saw fit to enforce the settlement. Given the considerable complexity involved and the associated expense in resolving the litigation and given that the May 17th Agreement allowed Debtor to proceed with either a chapter 11 plan or liquidation that might provide funds to unsecured creditors, we see no abuse of discretion and will not second guess the bankruptcy judge's decision.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's orders.

---

[5] Rule 9019 gives the bankruptcy court considerable latitude in approving a compromise or settlement: it may approve a compromise if it is fair and equitable. Fed. R. Bankr. P. 9019(a); *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1998). The four relevant factors are: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).