**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| IXCHEL PHARMA, LLC, *Plaintiff-Appellant*, <br><br> v. <br><br> BIOGEN, INC., *Defendant-Appellee.* | No. 18-15258 <br><br> D.C. No. 2:17-cv-00715-WBS-EFB <br><br> ORDER CERTIFYING QUESTIONS TO THE CALIFORNIA SUPREME COURT |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted May 15, 2019
San Francisco, California

Filed July 16, 2019

Before: J. Clifford Wallace, Sandra S. Ikuta,
and Morgan Christen, Circuit Judges.

# SUMMARY[*]

## California Law/Business Torts

The panel certified to the California Supreme Court the following questions:

> Does section 16600 of the California Business and Professions Code void a contract by which a business is restrained from engaging in a lawful trade or business with another business?

> Is a plaintiff required to plead an independently wrongful act in order to state a claim for intentional interference with a contract that can be terminated by a party at any time, or does that requirement apply only to at-will employment contracts?

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

We ask the California Supreme Court to resolve two open questions of state law. First, we need guidance in determining whether section 16600 of the California Business and Professions Code applies only to contracts between employers and employees, or also applies to contracts between two businesses. Second, the California Supreme Court has held that a plaintiff must plead an independently wrongful act in order to state a claim for intentional interference with an at-will employment contract. We need guidance, however, in determining whether this requirement applies to contracts outside of the employment context, as two California Courts of Appeal districts have suggested that it does not. Accordingly, we certify the following questions:

> Does section 16600 of the California Business and Professions Code void a contract by which a business is restrained from engaging in a lawful trade or business with another business?

> Is a plaintiff required to plead an independently wrongful act in order to state a claim for intentional interference with a contract that can be terminated by a party at any time, or does that requirement apply only to at-will employment contracts?

Our phrasing of the questions should not restrict the Court's consideration of the issues involved. The Court may rephrase the questions as it sees fit in order to address the contentions of the parties. If the Court agrees to decide these questions, we agree to accept its decision. We recognize that

the Court has a substantial caseload, but we submit these questions in the interests of comity and because of their significance for business torts in California.

I

Ixchel Pharma is a biotechnology company that develops small-molecule drugs for the treatment of mitochondrial disease. Ixchel has been working on the development of an experimental therapeutic drug to treat Friedreich's ataxia, a rare neurological disease. The active pharmaceutical ingredient in Ixchel's drug is dimethyl fumarate.

To further its efforts to develop and commercialize a new dimethyl fumarate drug, Ixchel entered into a Collaboration Agreement with Forward Pharma in January 2016. Forward is a biotechnology company based in Denmark that is in the business of developing drugs containing dimethyl fumarate for the treatment of neurological disease.

The Collaboration Agreement included the following terms. Ixchel and Forward would work together to develop the new dimethyl fumarate drug. Forward would assess the feasibility of conducting clinical trials for the new drug. If Forward determined that clinical trials were feasible, Forward would be responsible for carrying out the trials and paying for their costs under the terms of the Collaboration Agreement. Ixchel would provide assistance with the clinical trials. If the clinical trials were successful and resulted in FDA approval for the new drug, the parties agreed that Forward would be responsible for managing the manufacturing and commercialization of the drug with Ixchel's assistance. Ixchel would be entitled to receive a percentage royalty on the sales of the approved product.

Forward could terminate the Collaboration Agreement by written notice, which would become effective sixty days after notice was received.

In late 2016, Forward began negotiations with Biogen, another pharmaceutical company, in an effort to settle a longstanding intellectual property dispute. Ixchel alleges that Forward gave Biogen a copy of the Collaboration Agreement without Ixchel's consent. According to Ixchel, Biogen determined that Ixchel's development work on the new dimethyl fumarate drug would pose a threat to Biogen's sales of its own dimethyl fumarate drug designed to treat multiple sclerosis. Biogen therefore asked Forward to cut off all ties with Ixchel as part of the settlement.

In January 2017, Forward and Biogen executed an agreement (the Forward-Biogen Agreement) in which Biogen agreed to pay Forward $1.25 billion and Forward agreed to stop working with Ixchel to develop a dimethyl fumarate drug. Section 2.13 of the Forward-Biogen Agreement provides:

> *Ixchel.* Each of the Additional Parties[1] and [Forward] shall, and shall cause each of its respective controlled Affiliates to, terminate any and all existing, and not enter into any

---

[1] The "Additional Parties" are defined as Aditech Pharma AG, NB FP Investment General Partner ApS, NB FP Investment SLP ApS, and Tech Growth Invest ApS. None of these entities is a party to this appeal.

new, Contracts[2] or obligations to Ixchel Pharma LLC, Dr. Gino Cortopassi [Ixchel's CEO] and/or any other Person, to the extent related to the development by any of the Additional Parties, [Forward] or any of their respective controlled Affiliates of any pharmaceutical product having *dimethyl fumarate* as an [active pharmaceutical ingredient] for the treatment of a human for any indication, including Friedreich's ataxia.

Pursuant to this provision, Forward notified Ixchel that it was terminating the Collaboration Agreement and ceasing all work with Ixchel on the development of the new dimethyl fumarate drug, including work relating to the planned clinical trials.

Ixchel filed suit in district court against Biogen, asserting (1) tortious interference with contract; (2) intentional and/or negligent interference with prospective economic advantage; and (3) violations of California's unfair competition law (UCL), which prohibits "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.[3]

The district court dismissed Ixchel's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. It

---

[2] "Contract" is defined as "any contract, agreement, deed, lease or similar instrument, and any legally binding obligation, commitment, arrangement or understanding, whether written or oral."

[3] Ixchel also brought antitrust claims under the Sherman Act and California Cartwright Act but did not appeal the district court's dismissal of these claims for lack of antitrust standing.

determined that Ixchel had failed to state a claim for intentional interference with prospective economic advantage because Ixchel had failed to plead that Forward engaged in an independently wrongful act. For the same reason, the court held that Ixchel had failed to state a claim for tortious interference with contract. Acknowledging that such a claim does not ordinarily require a showing of an independently wrongful act, the district court concluded that Ixchel's agreement with Forward constituted an at-will contract because Forward could terminate with 60-day notice, and therefore Ixchel was required to plead a wrongful act. Because the court dismissed these claims, the complaint failed to allege an unlawful practice actionable under the UCL, and so the court also dismissed the UCL claim. The district court granted Ixchel leave to amend.

In its amended complaint, Ixchel pleaded that Forward violated section 16600 of the California Business and Professions Code by entering into section 2.13 of the Forward-Biogen Agreement.[4] Ixchel claimed that section 2.13 wrongfully restrained Forward from engaging in lawful business with Ixchel and therefore was void. By entering into an agreement that violated section 16600, Ixchel argued, Forward had committed an independently wrongful act. The district court disagreed, and again dismissed the complaint. The court reasoned that section 16600 barred only covenants

---

[4] Section 16600 provides:

> Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

Cal. Bus. & Prof. Code § 16600.

not to compete between employer and employee, and therefore did not apply to section 2.13 of the Forward-Biogen Agreement. Ixchel timely appealed.[5]

## II

We require the California Supreme Court's guidance to resolve the parties' dispute about the applicability of section 16600.

Prior to the enactment of section 16600, "contractual restraints on the practice of a profession, business, or trade, were considered valid, as long as they were reasonably imposed." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945 (2008). "However, in 1872 California settled public policy in favor of open competition, and rejected the common law 'rule of reasonableness,' when the Legislature enacted the Civil Code." *Id.* As interpreted by the California Supreme Court, section 16600 provides a broad right for individuals "to pursue any lawful employment and enterprise of their choice," and "an employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business unless the agreement falls within one of the exceptions to the rule." *Id.* at 946–47 (internal quotation marks omitted).

---

[5] Biogen argues that we lack jurisdiction under Article III of the U.S. Constitution because Ixchel has not suffered a concrete and particularized injury required for Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)*.* We conclude that Ixchel has adequately alleged an injury-in-fact for purposes of Article III standing because it alleges that the termination of the Collaboration Agreement resulted in the loss of a $150,000 grant from the Friedrich's Ataxia Research Alliance, as well as other harms. *Cf. Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1551 (9th Cir. 2017). Accordingly, we have jurisdiction over this appeal.

The California Supreme Court expressly rejected the Ninth Circuit's "narrow restraint" exception to section 16600, which held there was an exception to section 16600 for agreements that barred an individual "from pursuing only a small or limited part of the business, trade or profession." *Id.* at 948. Instead, the California Supreme Court held that "[n]oncompetition agreements are invalid under section 16600 in California, even if narrowly drawn, unless they fall within the applicable statutory exceptions of sections 16601, 16602, or 16602.5." *Id.* at 955.

In *Golden v. California Emergency Physicians Medical Group*, we read *Edwards* as extending beyond covenants not to compete between employers and their employees. 782 F.3d 1083, 1092–93 (9th Cir. 2015). Because the California Supreme Court "has articulated a broad understanding of what constitutes a void contract under section 16600," we concluded that the prohibition imposed by section 16600 extended to all "contractual restraints on professional practice" between employers and employees. *Id.* at 1093; *see also Great W. Distillery Prods., Inc. v. John A. Wathen Distillery Co.*, 10 Cal. 2d 442, 445–46 (1937) (applying section 16600's predecessor statute in the non-employment setting).

Neither the California Supreme Court, nor we, have considered whether section 16600 extends beyond the employment setting entirely to contractual restraints on business operations. As Ixchel points out, nothing in the plain language of the statute limits its applicability to the employment setting. By its terms, it applies to contracts restraining "anyone" from engaging in a lawful business of any kind. Cal. Bus. & Prof. Code § 16600. The term "anyone" is not defined, but to the extent it means "any

person," *Anyone*, Webster's New Int'l Dictionary (3d ed. 2002), other statutes regulating competition in the same chapter define "person" to include "a corporation, partnership, or other association," Cal. Bus. & Prof. Code § 16604; *see also id.* § 16605 (same).

Ixchel argues that under the interpretive approach mandated by *Edwards*, section 16600 should be read broadly to bar any contracts restraining a business from engaging in a lawful business. Under such a reading, section 2.13 of the Forward-Biogen Agreement would likely violate that provision, Ixchel argues, because it precludes Forward from entering into any new contract with Ixchel to develop new drugs containing dimethyl fumarate. Further, Ixchel claims, entering into a contract that is void pursuant to section 16600 is an unfair business practice, and therefore violates the California UCL. *See Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009). A violation of the UCL constitutes an independently wrongful act that is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003); *cf. Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 505 (2011). Therefore, Ixchel argues, it has stated an independently wrongful act for purposes of its claims for intentional interference with prospective economic advantage and intentional interference with contract.

In response, Biogen argues that section 16600 applies only in the employment context. Biogen asserts that applying section 16600 to any restraint of trade between two businesses would be contrary to the rule of reason in the federal antitrust context and invalidate ordinary commercial restrictions and contracts. For instance, Biogen claims, such

a broad interpretation of section 16600 would limit California businesses' ability to contract for exclusive-dealing arrangements or a manufacturer's location clause limiting where its dealers can sell. *See Golden*, 782 F.3d at 1086; *see also* Steven M. Perry & Sean F. Howell, *A Tale of Two Statutes:* Cipro, Edwards*, and the Rule of Reason*, 24 Competition: J. Anti., UCL & Privacy Sect. St. B. Cal. 21–22 (2015) ("If the California Supreme Court in *Edwards* did, in fact, intend to hold that *all* agreements restraining trade are void, regardless of their procompetitive or limited nature, then every joint venture, lease, distribution agreement, license agreement and many other widely used business agreements that fall under California law would be at substantial risk of invalidation under section 16600."). According to Biogen, the California legislature could not have intended such a broad application of this section.

Because the applicability of section 16600 determines whether the inclusion of section 2.13 in the Forward-Biogen Agreement constituted an independently wrongful act, and thus whether Ixchel has stated a claim that survives a motion to dismiss, the California Supreme Court's guidance on this issue will decide this case.

## III

We also require the California Supreme Court's guidance to resolve the parties' dispute about whether a claim for intentional interference with contractual relations requires the plaintiff to plead and prove an intentionally wrongful act.[6]

---

[6] We recognize that, should the California Supreme Court determine that section 16600 of the California Business and Professions Code applies to businesses as well as to individuals, it need not reach this issue

Biogen argues that under California law, the plaintiff must plead such a wrongful act when the contract at issue may be terminated at will by either party. Ixchel claims that this wrongful-act requirement applies only in the context of at-will *employment* contracts.

The California Supreme Court has not yet resolved this issue. Under long-standing California law, to prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

The California Supreme Court subsequently determined that in order to state a claim for an intentional interference with contractual relations in the context of an at-will employment contract, a plaintiff also has to plead an independently wrongful act. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (2004). The court's determination was based on a number of considerations. First, the Court held that "[w]here no unlawful methods are used, public policy generally supports a competitor's right to offer more pay or better terms to another's employee, so long as the employee is free to leave," *id.* at 1151.

---

because Ixchel would have adequately pleaded an independently wrongful act. We leave the order in which to answer these questions to the discretion of the Court.

Second, "[t]he interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." *Id.* (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968)).

Third, the California Supreme Court reasoned that "the economic relationship between parties to contracts that are terminable at will is distinguishable from the relationship between parties to other legally binding contracts." *Id.* Whereas an ordinary contract is generally "deemed worthy of protection from interference by a stranger to the agreement," in circumstances where "a party to a contract with the plaintiff is free to terminate the contractual relation when he chooses," then "any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them." *Id.* Because "an interference as such is primarily an interference with the future relation between the contracting parties," *Reeves* held that the "standard applicable to claims for intentional interference with prospective economic advantage" applied, meaning that "a plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard—that induced an at-will employee to leave the plaintiff." *Id.* at 1152–53 (internal quotation marks omitted).

Following *Reeves*, two different California Courts of Appeal districts have suggested that *Reeves* does not apply outside of the employment context. *See Redfearn v. Trader*

*Joe's Co.*, 20 Cal. App. 5th 989, 1003 (2018); *Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 62 (2016). According to *Popescu*, *Reeves* was based on "the dual public policy considerations of employee freedom of movement and a business's right to legitimately compete in the marketplace." 1 Cal. App. 5th at 62. Although "[t]hose policy considerations apply when a former employer sues the current employer for inducing its employee to terminate his or her at-will employment," they are not furthered when a third party interferes with an at-will employment contract for reasons unrelated to hiring an employee away from a competitor (as in *Popescu*) or when the contract at issue is not an employment contract. *Redfearn*, 20 Cal. App. 5th at 1004–05.

The California Supreme Court has not spoken to whether *Reeves* applies beyond the at-will employment context. Although the reasoning in *Reeves* was based in part on the policy of protecting employees' interests, the California Supreme Court also considered the special nature of a contract that allowed a party "to terminate the contractual relation when he chooses." 33 Cal. 4th at 1151. As *Reeves* explained, interference with a contract terminable at will was more like an interference with the future relation between the contracting parties, similar to claims for intentional interference with prospective economic advantage. *See id.* *Reeves* does not state that its rule is limited to the employment context.

In this case, the Collaboration Agreement was terminable on 60-day notice by Forward. If *Reeves* is applicable to at-will contracts outside the employment context, then Ixchel must plead an independently wrongful act in order to state a claim for intentional interference with contract. On the other

hand, if the *Reeves* rule applies only to at-will employment contracts, then Ixchel has stated a claim for tortious interference of contract that could survive a motion to dismiss regardless of the California Supreme Court's interpretation of the applicability of section 16600. The California Supreme Court's answer to these questions will also be dispositive of this issue, and we will follow its decision in this case.

IV

The Clerk of Court is hereby directed to transmit forthwith to the California Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 8.548. Submission of this case is withdrawn, and the case will be resubmitted following receipt of the California Supreme Court's opinion on the certified questions or notification that it declines to answer the certified questions. The Clerk shall administratively close this docket pending a ruling by the California Supreme Court regarding the certified questions. The panel shall retain jurisdiction over further proceedings in this court. The parties shall notify the Clerk of this court within one week after the California Supreme Court accepts or rejects certification. In the event the California Supreme Court grants certification, the parties shall notify the Clerk within one week after the Court renders its opinion.

**CERTIFICATION REQUESTED; SUBMISSION VACATED.**

**COUNSEL**

For Plaintiff-Appellant:

Christopher Banys
Richard C. Lin
Banys, P.C.
1030 Duane Avenue
Santa Clara, California 95054
(650) 308-8505

For Defendant-Appellee:

Mark S. Popofsky
Ropes & Gray LLP
2099 Pennsylvania Ave., NW
Washington, D.C. 20006
(202) 508-4624

Rocky Tsai
Ropes & Gray LLP
Three Embarcadero Center
San Francisco, California 94111
(415) 315-6358